## EVANSVILLE METAL BED COMPANY v. LOGE.

[No. 6,443. Filed October 30, 1908.]

1. TRIAL.—*Prejudiced Judge.*—Parties have the right to have their cases tried before an impartial tribunal. p. 463.

2. SAME.—*Delays.—Constitutional Law.*—Parties have a constitutional right to a speedy trial. p. 463.

3. SAME.—*Unprejudiced Jury.—Voir Dire Examination.*—Parties have a right to an impartial jury, and in order to secure same they may examine and reject jurors for cause, and may peremptorily discharge three each without cause. p. 463.

4. SAME.—*Change of Venue.—Number Permissible.*—A party has the right to one change of venue from the county; and where the party secures such change by agreement, and without the filing of an affidavit, his right is thereby exhausted. p. 463.

5. MASTER AND SERVANT.—*Defective Appliances.—Iron Moulding.— Sputtering.—Evidence.—Inferences.*—In an action against a company for injuries caused by the placing of a cold mould in the place of a heated mould, whereby the plaintiff, a servant, was injured by the sputtering of molten iron poured into such cold mould, direct evidence showing that a mould was used for two hours, that it became broken and was replaced, that such defective mould was removed with the naked hands, the evidence failing to show

which mould was replaced, that iron poured into one of the moulds sputtered, injuring plaintiff, that iron poured into cold moulds frequently sputtered, and that sputtering was also caused by other circumstances, fails to sustain a verdict for the plaintiff, since an inference from an inference is not permissible in the establishment of a fact.  p. 464.

6. EVIDENCE.—*Direct.*—*Circumstantial.*—Facts may be established by circumstantial as well as by direct evidence.  p. 468.

7. SAME.—*Circumstantial.*—To prove a fact by circumstantial evidence, direct evidence of related facts must be introduced from which an inference of the conjectured fact may be drawn.  p. 468.

From Posey Circuit Court; *O. M. Welborn,* Judge.

Action by Peter Loge against the Evansville Metal Bed Company. From a judgment on a verdict for plaintiff for $800, defendant appeals. *Reversed.*

*Elmer E. Stevenson, John E. Iglehart, Edwin Taylor, Eugene H. Iglehart* and *George D. Heilman,* for appellant.

*H. M. Logsdon, A. J. Veneman* and *G. V. Menzies,* for appellee.

RABB, C. J.—The appellee sued the appellant in the court below to recover damages for personal injuries alleged to have been sustained by him while in appellant's service, through the negligence of appellant. The cause was put at issue, a jury trial had, resulting in a verdict in appellee's favor. Appellant's motion for a new trial was overruled, and judgment rendered on the verdict. The cause originated in the Superior Court of Vanderburgh County. On motion of the appellee the venue was changed to the Gibson Circuit Court, and the venue changed from there to the Posey Circuit Court under the following agreement:

"For the reason that the defendant is unable to go to trial in such cause on April 25, 1906, the day fixed for the trial thereof in said court, and at the request of the defendant, the parties hereto mutually agree that the venue of said cause may be changed from Gibson county to Posey county," etc.

In the Posey Circuit Court the appellant, at the proper time, made application for a change of venue from Posey

county, and filed in support of the application an affidavit in due form, setting forth a statutory ground for such change. This application was refused. The overruling of this application and appellant's motion for a new trial are the only errors assigned and urged in appellant's brief as grounds for a reversal of the judgment. We will consider these in their order.

It is true, as insisted by appellant, that the trial of causes by an unbiased tribunal is a matter of the highest concern to the law, and that to compel a party litigant to submit the decision of his cause to a prejudiced tribunal is a gross invasion of his rights.

That justice shall be administered speedily and without delay is also a matter of such high concern to the law as to find a place among the rights guaranteed the citizen in the Constitution of the State. To insure to parties litigant an unbiased tribunal in which to try their cases the law gives to each party the right to challenge jurors from the panel for any cause that might possibly bias their minds in favor of or against either party, and adds to this the right to challenge without cause three jurors, and, in order that the party may intelligently exercise his right of challenge, each juror is subjected to an examination on his *voir dire* of almost boundless limits, and to these is also added the right to a change of venue from the county in which the case is pending, upon the filing of an affidavit of a party showing undue influence of his opponent over the citizens of the county, or of local prejudice against himself. On the other hand, to prevent the abuse of this privilege and to insure the speedy administration of justice, the legislature wisely provided that but one change of venue should be granted to the same party. As shown by the record, the change of venue from Gibson county was had at the request of the appellant. Its right in this respect was thereby exhausted. The fact that the change was made without the formality

of the filing of an affidavit, as required by the statute, and upon the agreement of the appellee, does not alter the case. It was nevertheless made upon the appellant's application, appellee merely consenting. No error was committed in refusing the second application.

The grounds of appellant's motion for a new trial pressed upon our consideration are that the evidence is insufficient to sustain the verdict, and that the court erred in giving certain instructions.

The appellant was engaged in the manufacture of metal bedsteads, and used gas-pipe for the bedposts, moulding a foot on each post. In doing this work, at the time appellee was injured, it was using iron moulds, called chills, composed of two pieces, one firmly attached to a foot rack, the other movable and attached to the fixed piece by a hinge on one side and a latch on the other. A piece of tubing intended for a post was put in a chill, molten iron poured into the chill, a foot moulded on, the mould opened by unlatching the movable piece and the post removed.

On the occasion of his injury the appellee was serving as a pourer, carrying the molten iron from a retort and pouring it into the moulds. Another employe of appellant had charge of the chills, putting the posts in, and, when the feet were moulded, opening the chills, removing the moulded posts and putting in other tubes. The work began about 7 o'clock a. m., and at 9 o'clock a. m. an intermission of fifteen minutes was allowed the workmen for rest and refreshments. While the work was in progress, and before the intermission, the man in charge of the chills discovered that the latch on the movable part of one of them was broken. He removed it from the fixed part, took it to the repair room, where it was repaired, and it was replaced while the pourers were at lunch, and without notice to them of the circumstance. Immediately after resuming work after lunch, when appellee was in the act of filling one of the

moulds with the molten iron, some of it sputtered out of the mould, back into his face and eyes, and inflicted the injury complained of. It appears that the appellee and others engaged in the same work were furnished by the appellant with goggles, to be worn over their eyes to protect them from accidents of the kind that happened to appellee. It is the theory of appellee's case that after the moulds became thoroughly heated there was no danger from sputtering iron when poured into the mould, and that the use of the goggles thereafter could be safely dispensed with, that after the moulds had thus become heated the man in charge of them removed the defective piece, cooled it off in water, and placed it back on the rack; that it was thus rendered dangerous to be used without having the eyes covered with goggles, and that it was the duty of the man in charge of the moulds or chills to notify appellee of the fact that he had taken out the piece of the chill and cooled it off; that he failed to do so, and that in the matter of removing the chill and replacing it, without notice to appellee, he was a vice-principal; that, after the mould was thus replaced, the appellee, without notice of the presence of the cold chill, undertook to pour the molten iron into it, without using the goggles over his eyes, when, on account of its being cold, the iron sputtered back and injured him; that had he been notified of the condition of the chill he would have protected himself by using the goggles.

It was essential to make out his case that the appellee prove by competent evidence: (1) That the condition of the chill removed from the rack and repaired was changed; that is, that it was cooled off by the party who removed it, either with water, or by some other means, and then replaced; (2) that the appellee was engaged in pouring molten metal in this particular chill at the time he was injured; (3) that the changed condition of the chill was the cause of the molten metal's flying into appellee's eyes. None

of these facts was established by direct evidence. Circumstances are relied upon to establish each one of them. No witness testified that the defective chill removed was thoroughly heated at. the time it was taken off the rack, or that it was cooled by putting it in water, or otherwise. The only persons having an opportunity of knowing the facts in that regard were the man who removed it and the machinist who repaired it. Each testified positively that he did not cool the chill, and that at the time it came into his hands it was cool enough to handle with the naked hands, and that it was in practically the same condition regarding heat when put back on the rack, after being repaired, that it was before it was taken off. There was evidence that the work of moulding began in appellant's establishment, on that day, at about 7 o'clock a. m., and continued uninterruptedly until the intermission, at 9 o'clock a. m., and that the constant use of the chills for moulding for that length of time would thoroughly heat them.

The evidence shows that there were from one hundred to two hundred moulds of different kinds in use in the foundry, and among them eighteen used for the purpose of moulding the ball or foot on the bedposts; that there were five men engaged in pouring the metal into all of these chills, appellee being one of the number, and he was the only witness testifying who was engaged in this work. He was wholly unable to tell how many times he or any other person had poured molten metal into this particular chill. It was in evidence that the pin, upon which the latch caught that held the two pieces of the chill together, was broken, and, of course, in this condition the chill could not be used. When it was so broken, and by whom the fact was first discovered, are not disclosed by the evidence. Whether its defective condition was first discovered by the man in charge of the chills, or by one of the other four pourers, is a matter of conjecture.

There was no testimony that the man who repaired the

chill cooled it, and that fact can not be inferred from the inference that the chill was thoroughly heated before it was removed from the rack, and was cool enough for the machinist to handle it with his naked hands when it reached him, within a few minutes after such removal. So that to conclude that the chill was cooled we must infer that fact from the inference of other facts arising from this uncertain character of evidence. The same process of reasoning is necessary to establish each of the other essential facts. Neither the appellee nor any other witness who testified in the case was able to identify the chill into which appellee was pouring the metal when the accident occurred as the one which was repaired. As before stated, there were eighteen of these chills used to mould feet to the bedposts, and all substantially alike. The appellee did not know which one of the eighteen was repaired, nor was he able certainly to identify the one into which he was pouring the iron when the accident occurred. He thought it was the third or fourth from the end, on the row next to the cupola. The appellant's witness, who removed the chill for repairs, said he thought it was one of six nearest the end on the row that was repaired, next the cupola, but which one he was unable to say.

The process of reasoning by which the identity of the repaired chill and the one the appellee was using when hurt is established is this: (1) That the broken chill was heated and that is to be inferred from the fact that the employes had been pouring hot iron into the chills for two hours before the lunch hour. (2) That the heated chill had been removed and cooled with water, and that is to be inferred from the inference that it was heated when removed, and in a few moments afterwards was discovered to be cool enough to handle with the naked hands. (3) Because molten iron poured into a cold chill is liable to cause the iron to fly back from the chill.

If the fact that the chill had been cooled off after it

was removed from the rack were proved by direct evidence, and was an established fact in the case, the probative value of the phenomenon that the iron flew back when poured into this particular chill would depend upon whether this was the only chill which exhibited this phenomenon when the iron was poured into it. For anything appearing to the contrary in the evidence, all of the other chills may have acted in the same way. There is no evidence as to what was exhibited when the iron was poured into the other chills after the lunch hour, and the evidence does not disclose but what there were many other causes beside the chill's being cold that would cause the iron to fly out.

No one questions but that the facts necessary to make out a civil cause of action may be established as well by circumstantial evidence as by direct proof, and the circumstances may be such in some cases as to contradict and overcome the direct and positive testimony of witnesses to the contrary.

Circumstantial evidence of a fact consists in reasoning from the facts which are known or proved to establish such as are conjectured to exist; but the facts relied upon to establish the conjectured fact must be proved by direct evidence, or known to exist. The process is fatally vicious if the circumstances from which we seek to deduce the conclusion depend also upon conjecture or inference, whether they arise in a civil or a criminal case. 3 Rice, Evidence, §342; *Jenkins* v. *State* (1885), 62 Wis. 49, 21 N. W. 233.

In *People* v. *Kennedy* (1865), 32 N. Y. 141, Justice Denio, speaking for the court with reference to this kind of proof, said: "The logic upon which circumstantial evidence is based is this: We know, from our experience, that certain things are usually concomitant of each other. In seeking to establish the existence of one, where the direct proof is deficient or uncertain, we prove the certain existence of

the correlative fact, and thus establish with more or less certainty, according to the nature of the case, the reality of the principal fact. But the reasoning is a perfect fallacy, if the defect of proof which renders it necessary to call for the aid of the collateral circumstance equally attached to such collateral circumstance. It is like the blind leading the blind.'' When circumstantial evidence is relied upon to prove a fact, the circumstances themselves must be proved and not presumed. *United States* v. *Ross* (1875), 92 U. S. 281, 23 L. Ed. 707; *Cunard, etc., Co.* v. *Kelley* (1903), 126 Fed. 610, 61 C. C. A. 532; *United States Fidelity, etc., Co.* v. *Des Moines Nat. Bank* (1906), 145 Fed. 273, 74 C. C. A. 553; *Asbach* v. *Chicago, etc., R. Co.* (1888), 74 Iowa 248, 37 N. W. 182; *Neal* v. *Chicago, etc., R. Co.* (1905), 129 Iowa 5, 105 N. W. 197, 2 L. R. A. (N. S.) 905; *Smith* v. *First Nat. Bank, etc.* (1869), 99 Mass. 605, 97 Am. Dec. 59; *Crafts* v. *City of Boston* (1872), 109 Mass. 519; *Morley* v. *Eastern Express Co.* (1874), 116 Mass. 97; *Ruppert* v. *Brooklyn Heights R. Co.* (1897), 154 N. Y. 90, 47 N. E. 971; *Neal* v. *Chicago, etc., R. Co., supra; Bowman* v. *Little* (1905), 101 Md. 273, 61 Atl. 223; *Fields* v. *Missouri Pac. R. Co.* (1905), 113 Mo. App. 642, 88 S. W. 134; *Philadelphia, etc., R. Co.* v. *Henrice* (1880), 92 Pa. St. 431, 37 Am. Rep. 699; *Commonwealth* v. *Webster* (1850), 5 Cush. 295, 52 Am. Dec. 711. Applying this rule to the evidence in this case, it fails to prove the essential facts averred in appellee's complaint.

Other questions are discussed; but, inasmuch as they will probably not arise upon a second trial of this cause, they are not considered or decided.

The judgment of the court below is reversed.