**HALL, Appellant v. FERRO-CONCRETE CONSTRUCTION COMPANY, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6209.   Decided March 15, 1943.

John W. Cowell, Cincinnati, for appellant.
August A. Rendigs, Jr., Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

This is an action for wrongfully causing death. The decedent was found on a pile of cement-filled sacks on the first floor of a building at the bottom of a stair-well unconscious and suffering from injuries from which he died twenty-three days thereafter, without regaining consciousness. The building was in process of construction by the defendant as the general contractor. The decedent was employed by Clermont Roofing Company, a sub-contractor, to help in applying corrugated sheet iron to the sides of the building. The floor of the building had been laid and some of this iron sheeting had been brought to the third floor. The specific duty of the decedent was to bring the sheets up to the proper floor, and then after any necessary shaping had been done, pass them out the window to other employees of the subcontractor who would attach them to the side of the building.

The last time the decedent was seen before he was discovered on the cement sacks at the bottom of the stair-well, he was standing on the third floor about two feet away from the edge of the stair-well opening, and not more than four feet from a co-employee to whom the decedent was talking while the former was cutting a sheet of metal to make it fit around a window. His co-employee knew he was there, not only because he was talking to him. but also because he could and did see him while the former was engaged in cutting the metal. Without seeing or hearing the decedent leave his position, his co-employee noticed the decedent was not there just as he finished cutting the metal. Knowing that the decedent could not have left the third floor in any other way than through the stair-well without disturbing him and thereby attracting his attention, the co-employee looked down the stair-well and saw the decedent lying at the bottom. He was able to do this by stooping over without leaving the position where he had been cutting the metal. All this took place in the space of not to exceed five minutes.

The stair-well was four feet wide by eight feet long. The stairs had not been placed in it, but the workmen had placed a ladder in it which they used in going from the second to the third floor in the course of their work. Just where this ladder was situated in the well is not disclosed by the evidence other than that it extended from the second floor to the third floor.

The floors were supported by horizontal beams. On one of these beams, which was immediately below the side of the opening on the

second floor was found some blood and hair that was the same in color as the decedent's hair. This was about twelve feet below the third floor.

There were two co-employees of the decedent on the third floor at the time, but only one was called as a witness. That witness testified that he had been told that the other employee was working in Miami, Florida, at the time of the trial. No other excuse for not securing his testimony was offered.

Most of the original papers, including the petition, were not filed in this court on this appeal. The clerk certified that the papers were missing from the files. However, we learn from the appellant's brief the negligence relied on was the maintaining of an "open hatchway without any guardrails or other protection of any description around it, thereby creating a dangerous and unsafe condition, and in maintaining that unsafe condition in violation of §871-15 GC."

At the close of the plaintiff's evidence, the trial court sustained the defendant's motion for an instructed verdict and entered judgment on the verdict. It is from that judgment that this appeal was taken. The appeal presents the question of whether there is any substantial evidence of negligence on defendant's part directly causing the decedent's death.

The applicable rule of law is not in dispute. The parties differ as to the result of its application to the evidence. They agree that circumstantial evidence is competent and in certain situations is most persuasive, but that in order to keep findings of fact within the bounds of rationality it is necessary to place limits upon permissible inferences therefrom. This limit is frequently expressed in the form of the rule that an inference cannot be drawn from another inference. **Sabolovitz v Lubric Oil Co., 107 Oh St 204; Strobel v City of Cincinnati, 32 Oh Ap, 334,** U. S. v Rose, 92 U. S. 281, Topeka & Santa Fe R. R. Co. v Baumgarten, 10 Anno. Cases, 1094 at 1097, Lawson on Law of Presumptive Evidence, 652, et seq.

The rule is designed to prevent the chain of inferences being spun out into the region of barest conjecture.

In 20 Am. Jur., 169, it is said:

"Thus while negligence as well as the manner in which an accident occurred, may be inferred from known or established facts and circumstances, such an inference must be founded upon some known or established fact, and cannot be conjectured from other inferences. * * * The decisions disclose that when the court seeks to apply the rule forbidding the basing of one inference upon another, what is meant is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility."

Under such circumstances the evidence may and usually does raise many possibilities but fails to furnish a reasonable basis for a probability. And as it is the duty of the party upon whom the burden of proof rests to supply a reasonable basis for preferring his claim to that of other possibilities, he fails when the evidence furnishes no reasonable basis for a choice among the possibilities.

Now the negligence relied on was the failure to have guard rails or other protection around the stair-well and as the evidence placed the decedent on the third floor, it must be assumed that this protection should have been installed on that floor and its omission made the place unsafe for employees and frequenters.

The evidence makes it possible that in a moment of forgetfulness the decedent stepped backward into the stair-well. It is also possible that he lost his balance in some way and fell into it. In either event, the presence of a sufficient guard might have prevented the accident. There is no evidence that either of these possibilities actually occurred. There is no evidence that anything occurred on the third floor that would cause a reasonable person to conclude that either occurred. There was no mark on the third floor or on the ladder or the walls at that point or near there that would indicate that the decedent had lost control of his movements at that point rather than at a point below the third floor. There is nothing whatever to exclude the possibility that he voluntarily and with full control of his movements passed through the opening in the third floor and that at some point below the third floor something happened which caused him to fall from that point to the cement sacks below. The only evidence indicating that he had fallen was the blood and hair on the beam below the second floor twelve or more feet below the third floor and only about five feet above the top of the pile of sacks of cement.

As there is no evidence whatever as to the exact place and manner in which the decedent lost control of his movements, there is no limit to the possibilities that a fertile imagination could conjure up in that respect.

If the decedent passed voluntarily from the third floor into the stair-well, the failure to have guards around the stair-well could have no possible causal relation—direct or remote—to his injuries and death. If the blood and hair had been on the beam at the third floor opening it would have tended to indicate that the decedent had in some way lost control of his movements at a point where the guard rails would or might have protected him from falling into the well, but their presence twelve or more feet below that point has no such tendency under the circumstances.

Counsel for appellant relies principally upon the case of **Hauer, Admr. v The French Brothers Bauer Co., 43 Oh Ap 383,** but in that case the newly discovered evidence upon which a new trial was ordered disclosed that the decedent was discovered wrapped around a revolving shaft and that long pieces of twine

were found in some way attached to his person and also wrapped around the shaft. The negligent act relied upon was the failure to encase this revolving shaft. This evidence tended to prove not only the violation of the statute (§1027 GC) but also the exact manner in which it caused the decedent's injuries. The causal relation was clear. It was not a case, as this is, of many equally plausible possibilities.

Reliance is also placed on **The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v Stewart, Admr., 12 Oh Ap 72.** In that case it appears that the mutilated body of an experienced and skillful brakeman of good habits was found near a switch. When last seen alive he was on a defective platform operating a defective brake on a moving railroad car in the act of making a "flying switch." The evidence therefore placed the decedent in direct contact with a defective appliance capable of producing the result and suggested no other efficient cause for what happened.

The same can be said of the case of **Grunkemeyer v The Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 3 Oh Ap 62.** The evidence showed that decedent and another were approaching a steam railroad crossing. The decedent's body was found alongside the track and her companion's body was found in a mangled condition on the track indicating that he had been run over by the train. Flesh was found on the defendant's engine shortly after it had passed the spot. While no one saw the collision, can any one doubt that a collision took place? The circumstances furnish a reasonable basis for the conclusion.

The case at bar falls in a different category illustrated by such cases as **Frommel v Coney Island Co., 20 OO 325; Connelton v Loeb, 22 C. C. (N.S.) 15; Flamm v Coney Island, Inc., 49 Oh Ap 122; Bender v Hanna, 16 C. C. (N.S.) 387; Railway Co. v Andrews, 58 Oh St 426,** and many others in which reliance was placed on circumstantial evidence that failed to furnish a reasonable basis for the conclusion that it was the defendant's negligence that resulted directly in the plaintiff's injury. As is said in **29 O. Jur., 692:** "An allegation that one sustained injuries by reason of the negligence of the defendant is not sustained by the proof of circumstances from which the fact that his injuries were so sustained is not a more natural inference than any other."

We conclude that the evidence in this case fails to show any causal relation between the absence of guard rails around the third floor opening and the precipitation of the decedent onto the cement sacks on the first floor, that it leaves the matter in the realm of pure speculation and guessing, and that therefore the plaintiff failed to prove that the decedent's death was the result of the defendant's negligence, and that the court did not err in instructing a verdict for the defendant.

For these reasons, the judgment is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.