ETHEL SOWERS, ADMINISTRATRIX OF JAMES D. SOWERS, v. HOWARD J. MARLEY.

(Filed 21 May, 1952.)

**1. Negligence § 17—**

Plaintiff in an action based on negligence has the burden of producing evidence, either direct or circumstantial, sufficient to establish negligence on the part of defendant and that such negligence proximately caused the injury.

**2. Negligence § 19b (1)—**

In order for circumstantial evidence to be sufficient to be submitted to the jury in an action for negligence, the facts presented must reasonably warrant the inference that the injury was the result of actionable negligence on the part of defendant, and such inference must rest upon facts in evidence and cannot rest on conjecture or surmise from the evidential facts.

**3. Automobiles § 8a—**

The driver of a motor vehicle is under duty to maintain a proper lookout, to keep his vehicle under reasonable control, and not to drive it at an unlawful speed.

**4. Automobiles § 12a—**

It is not only unlawful to operate a motor vehicle in excess of the statutory maximum, but it is also unlawful to operate a motor vehicle at a speed greater than is reasonable and prudent under the existing conditions because of special hazards with respect to pedestrians or other traffic, even though less than the statutory maximum. G.S. 20-141.

**5. Evidence § 17—**

Plaintiff, by offering in evidence an uncontradicted extra-judicial declaration of defendant, is bound thereby.

**6. Automobiles § 18h (2)—Circumstantial evidence held insufficient predicate for inference of negligence.**

Plaintiff introduced evidence that some five or six minutes before the collision, intestate was seen at some undesignated distance west of the place of collision leading his horse eastward along the northern half of the highway, and introduced the extra-judicial statement of defendant that intestate and his horse suddenly and unexpectedly emerged from the darkness north of the highway and dashed onto the highway in the path of his vehicle. *Held:* The evidence is insufficient to support the inference that intestate was in plain view leading his horse along the highway and that defendant could have seen him in time to have avoided the collision, since the inference that intestate was leading his horse eastward along the northern half of the highway is not predicated upon facts in evidence but an inference from other facts, and the contention that defendant could have seen intestate in time to have avoided injuring him is in conflict with the only testimony upon this question.

APPEAL by plaintiff from *Pless, J.,* at February Term, 1952, of DAVIDSON.

Civil action by administratrix to recover damages for the death of her intestate who was struck and killed by an automobile while he was on foot in the traveled portion of a highway.

United States Highway No. 64, which runs east and west, crosses State Highway No. 109, which runs north and south, in the eastern section of Davidson County. It is paved to a width of twenty feet, has a dirt shoulder three feet wide on each side, and is virtually level and straight for a distance of twelve hundred feet east of the intersection with State Highway No. 109. There are no obstructions to view along State Highway No. 64 or its shoulders anywhere in this space.

The night of 1 May, 1951, was dry, and "very dark." At sometime after nine o'clock on that night, the plaintiff's intestate, James D. Sowers, who was on foot in the paved portion of United States Highway No. 64 five hundred feet east of its intersection with State Highway No. 109, was instantly killed when he was struck on his left side by the front of a westbound passenger carrying Plymouth automobile driven by the defendant, Howard J. Marley, who was en route to Lexington. The place of collision was not in a business or residential district. The intestate, who was wearing "dark-colored clothes," was not carrying a lantern or any other light. His body, which was much broken and crushed, came to rest in the middle of the highway at an undesignated distance west of the point of impact. Although its brakes were not applied, the Plymouth car was brought to a standstill thirty-five feet west of the body. The defendant stayed at the scene until the body was removed, and peace officers finished their investigation.

The only evidence at the trial was that offered by the plaintiff, which had a strong tendency to establish the matters stated in the two preceding paragraphs. None of the persons testifying in her behalf actually saw the collision. As a consequence, she undertook to show legal culpability on the part of the defendant by these circumstances:

1. The plaintiff's intestate had an unshod horse, whose color is not revealed by the evidence. About five or six minutes before the collision, the plaintiff's witness Grady Hughes saw the intestate at some undesignated distance west of the place of collision "leading his horse . . . east . . . on Highway 64" by a bridle or halter.

2. The defendant made these statements after the collision: As he drove his Plymouth car westward on the highway at a speed of "forty to fifty miles an hour," an automobile approached from the west. He dimmed his headlights, and the driver of the oncoming automobile did likewise. After he met and passed the eastbound automobile, he turned his headlights to normal. A "split second later," he saw the intestate and his horse "having a struggle" on the northern shoulder of the highway,

and in another "split second they came" onto the pavement "in front of him and he hit them. He stopped as quick as he could."

3. The horse suffered no injury except "a bare scratch which merely showed the blood." After the accident, nine tracks made by an unshod horse were plainly visible on the dirt shoulders of the highway immediately adjacent to the place of the collision. Four of them were on the northern shoulder, and five of them were on the southern shoulder. Those south of the highway "were pretty far apart" and indicated that "the horse was jumping or running."

When the plaintiff had introduced her evidence and rested her case, the trial judge allowed the motion of the defendant for an involuntary nonsuit, and entered judgment accordingly. The plaintiff appealed, assigning the compulsory nonsuit as error.

*Phillips & Bower for plaintiff, appellant.*
*Don A. Walser for defendant, appellee.*

ERVIN, J. This case is bottomed on negligence. In an action for death by wrongful act based on negligence, the burden rests on the plaintiff to produce evidence, either direct or circumstantial, sufficient to establish the two essential elements of actionable negligence, namely: (1) That the defendant was guilty of a negligent act or omission; and (2) that such act or omission proximately caused the death of the decedent. *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406; *White v. Chappell,* 219 N.C. 652, 14 S.E. 2d 843; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446.

To carry this burden by circumstantial evidence, the plaintiff must present facts which reasonably warrant the inference that the decedent was killed by the actionable negligence of the defendant. *Wyrick v. Ballard Co., Inc.,* 224 N.C. 301, 29 S.E. 2d 900; *Corum v. Tobacco Co.,* 205 N.C. 213, 171 S.E. 78; *Lynch v. Telephone Co.,* 204 N.C. 252, 167 S.E. 847. An inference of negligence cannot rest on conjecture or surmise. *Smith v. Duke University,* 219 N.C. 628, 14 S.E. 2d 643; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Ham v. Fuel Co.,* 204 N.C. 614, 169 S.E. 180; *Grimes v. Coach Co.,* 203 N.C. 605, 166 S.E. 599; *Rountree v. Fountain,* 203 N.C. 381, 166 S.E. 329. This is necessarily so because an inference is a permissible conclusion drawn by reason from a premise established by proof. *Cogdell v. Railroad Co.,* 132 N.C. 852, 44 S.E. 618; *Wollard v. Peterson,* 143 Kan. 566, 56 P. 2d 476.

The plaintiff undertakes to prove the legal culpability of the defendant in the case at bar by circumstantial evidence. As a consequence, the appeal raises the question whether the facts produced by the plaintiff at the trial reasonably warrant the inference that her intestate was killed by the actionable negligence of the defendant.

20—235

The law imposes upon the operator of a motor vehicle the duty to maintain a proper lookout, the duty to keep his vehicle under reasonable control, and the duty to drive at a lawful speed. *Register v. Gibbs,* 233 N.C. 456, 64 S.E. 2d 280. The tragic event producing this litigation happened on a highway outside a business or residential district. Under the statute prescribing speed restrictions, it is unlawful to operate a passenger car on a highway in such a place in excess of fifty-five miles per hour. The defendant did not exceed this definite statutory limit. The speed of a motor vehicle may be unlawful, however, under the circumstances of a particular case, even though such speed is less than the definite statutory limit prescribed for the vehicle in the place where it is being driven. The statute expressly provides that "the fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed . . . when special hazard exists with respect to pedestrians or other traffic," and that "no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." G.S. 20-141 as rewritten by Section 17 of Chapter 1067 of the 1947 Session Laws; *Rollison v. Hicks,* 233 N.C. 99, 63 S.E. 2d 190.

The plaintiff insists that the evidence reasonably warrants the inference that the defendant was negligent in that he violated one or more of the three duties enumerated in the preceding paragraph, and that such negligence proximately caused the death of the intestate.

The plaintiff advances this argument to support her position: The intestate was in plain view leading his horse eastward along the northern half of the highway as the defendant approached the place of collision, and in consequence the defendant could have seen him in time to have avoided any injury to him by stopping the Plymouth, or by decreasing its speed, or by changing its course. Despite this, the defendant ran the intestate down, inflicting immediate death upon him. Hence, it is permissible to infer that the defendant negligently killed the intestate by failing to maintain a proper lookout, or by failing to keep the Plymouth under reasonable control, or by driving at a speed greater than was reasonable and prudent under the circumstances.

In the very nature of things, it is not permissible to draw an inference of actionable negligence on the part of the defendant from the plaintiff's twofold premise that "the intestate was in plain view leading his horse eastward along the northern half of the highway as the defendant approached the place of collision and in consequence the defendant could have seen him in time to have avoided any injury to him" unless the premise is supported by the evidence.

There is not a scintilla of evidence as to the route or whereabouts of the plaintiff's intestate and his horse between the time they were seen by

the witness Grady Hughes at some undesignated distance west of the place of the collision and the time they were glimpsed by the defendant for a "split second" on the dirt shoulder north of the highway immediately adjacent to the point of impact. The testimony leaves this crucial matter to conjecture and surmise. This being true, there is no evidence of the existence of the supposed fact that "the intestate was in plain view leading his horse eastward along the northern half of the highway as the defendant approached the place of collision."

In reaching this conclusion, we do not overlook the plaintiff's contention that this supposed fact ought to be inferred from the evidence that shortly before the tragic accident the witness Grady Hughes saw the intestate at some undesignated distance west of the place of collision "leading his horse . . . east . . . on Highway 64." This contention conflicts with the accepted and sound rule of law and logic that the facts from which an inference of negligence may be drawn must be proved, and cannot themselves be inferred or presumed from other facts which merely raise a conjecture or possibility of their existence. 20 Am. Jur., Evidence, section 165. See, also, in this connection the North Carolina cases heretofore cited, and these additional authorities: *Evansville Metal Bed Co. v. Loge,* 42 Ind. App. 461, 85 N.E. 979; *Hall v. Ferro Concrete Const. Co.,* 71 Ohio App. 545, 50 N.E. 2d 556; 65 C.J.S., Negligence, section 243.

An even stronger consideration negatives the existence of the second supposed fact embodied in the plaintiff's premise, *i.e.,* that the defendant could have seen the intestate in time to have avoided injuring him. The plaintiff did not adduce a single independent fact disclosing how far the Plymouth car was from the place of collision when the intestate and his horse became visible to the defendant. But she did offer in evidence a relevant extra-judicial statement of the defendant, which is not contradicted by other testimony and by reason thereof must be deemed to be true. According to this statement, the intestate and his horse suddenly and unexpectedly emerged from the darkness north of the highway and dashed onto the highway and into the path of the oncoming automobile when the vehicle was almost alongside them, rendering the fatal collision inevitable.

The involuntary judgment of nonsuit is
Affirmed.