CLARENCE E. PARKER, ADMINISTRATOR OF THE ESTATE OF BONNIE BEULAH IRENE PATRICK, DECEASED, v. R. K. WILSON, EXECUTOR OF THE ESTATE OF ROBERT DONALD WILSON, DECEASED.

(Filed 30 October, 1957)

1. **Automobiles § 41p—**

   G.S. 70-1.1 raises no presumption that the owner of an automobile was the driver thereof at the time of a wreck.

2. **Same: Constitutional Law § 10—**

   Where the owner of an automobile is an occupant therein at the time of an accident, whether such owner should be presumed to have been the driver of the car at the crucial time is a matter for the General Assembly and not the courts.

3. **Automobiles § 41p—**

   Where plaintiff must rely on the physical facts and other evidence of a circumstantial nature to establish which of the two occupants of a car was the driver thereof at the time of the fatal accident, plaintiff must establish attendant facts and circumstances which reasonably warrant his asserted inference, and such inference cannot rest on conjecture or surmise.

4. **Trial § 23a—**

   To carry his case to the jury plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference.

5. **Automobiles § 41p—Physical facts held insufficient to go to jury on question of whether defendant's testate was driving car.**

   The evidence tended to show that plaintiff's intestate and defendant's testate were riding in testate's car at the time it crashed violently into a tree, resulting in the death of both. After the accident, testate's body was found on the right with his head partially through the windshield, and the body of the plaintiff's intestate was found on the left, with her head lying on the steering column and switch key, which was just a few inches to the right of the steering column, and with her left arm up over the steering wheel. *Held:* The evidence, together with other evidence in the case in regard to the position of the bodies and damage to the car, is insufficient to go to the jury upon plaintiff's averment that defendant's testate was driving the car at the time of the fatal accident.

   HIGGINS, J., dissenting.

APPEAL by plaintiff from *Crissman, J.,* January Term 1957 of FORSYTH.

Civil action to recover damages for an alleged wrongful death brought by the administrator of the estate of Bonnie Beulah Irene Patrick, deceased, against the executor of the estate of Robert Donald Wilson, deceased.

From a judgment of nonsuit entered at the close of plaintiff's evidence, plaintiff appeals.

*Spry, White & Hamrick for plaintiff, appellant.*
*Deal, Hutchins & Minor for defendant, appellee.*

PARKER, J. For the sake of brevity plaintiff's intestate will be called Bonnie Patrick, and Robert Donald Wilson will be called Donald Wilson.

Donald Wilson owned a 1952 Oldsmobile automobile. He and Bonnie Patrick had been dating regularly. Between 9:00 and 10:00 p.m. on 23 December 1954 W. C. Campbell saw them leave his home in Donald Wilson's automobile. He did not testify who drove the automobile away.

Just after midnight on the morning of 24 December 1954, about 12:15 a.m., H. W. Holton was at Sheet's Barbecue Place adjacent to U. S. Highway 158. Just beyond this barbecue place there is a curve in the road. He saw an automobile approaching the curve travelling on the highway at a speed of approximately 65 or 70 miles an hour. Just as the automobile rounded the curve it cut across the road into the woods. He heard a crash, and went to the automobile. He found the automobile against a tree, and two people inside it, a man and a woman. The woman was Bonnie Patrick and the man was Donald Wilson. They were in the front seat, and the back seat was thrown up against the windshield on top of them. The biggest portion of the upper part of the woman's face on the right side was torn off, and her head was lying on the switch key and on the steering column, right between them. The switch key on the automobile was just a few inches to the right of the steering column, low on the dash. The man was on the right side with his head partially out of the windshield. He took the back seat off of them, and the man slid down until his head was lying on the dash, and he stayed there until he was moved to an ambulance. After he was moved, Holton saw a dent just above the glove compartment. On cross-examination Holton testified as follows: He was the first one at the scene. "When I saw them, the girl's left arm was up over the steering wheel, hanging onto it, and she was down sort of with her head against the rod of the steering wheel, and her left hand was over the steering wheel." He noticed a pool of blood directly under the switch key where her head was resting. He opened the left door of the

automobile, which is the door next to the steering wheel. There was a woman's shoulder bag hanging on the window latch of the left door, when he opened it. The woman's right foot was under the gas pedal from the right side. On redirect examination Holton testified that he found a liquor bottle in the automobile with the seal unbroken, and that when he arrived, the woman's left foot was to the left of the steering column.

About 12:30 a.m. R. L. Ellis was driving on U. S. Highway 158. When he arrived at Sheet's Barbecue Place, he stopped and went to the wreck. At the wreck, he saw a woman and a man in an Oldsmobile automobile. The woman was about the center of the car, and someone was holding her head up. The man was on the extreme right of the car with his head lying on the dash. As best he could tell, the man was not breathing, the woman was breathing hard, and he thought she was unconscious. "The right of the windshield was busted out, I believe." The steering wheel of the car was on the left side. The woman was bleeding pretty bad. When the ambulance came to get the people, he pulled the seat back from the right-hand side of the car to get the man and woman out of the car. R. L. Ellis was recalled for cross-examination and testified as follows: "In my direct testimony I testified that I was present when the girl and boy were taken out of the car. At that time I testified that they were taken out on the right side of the car."

Tony Barney testified that he arrived at the scene of the wreck between 12:15 and 12:30 a.m. When he arrived, between three and six people were there. A man and a woman were in the car. The man was lying all the way against the right corner of the windshield with his head on the dash. The woman was over near the steering wheel, with her head lying on top of the steering wheel. He testified: "Laying up on top of the steering wheel. The bottom was bent down, and she was laying in the top of it. I don't know where her feet were exactly but they were somewhere in the floorboard. She was sitting on the seat near the steering wheel. She wasn't under the steering wheel." The right-hand side of the windshield was broken out in the bottom.

Plaintiff saw this car about 5:00 a.m. after it had been moved. He saw some brown hair and blood on the dash. Bonnie Patrick had brown hair, and Donald Wilson black. Bonnie Patrick never regained consciousness.

Bonnie Patrick's mother saw the wrecked Oldsmobile automobile. She testified that she saw a terrible dent place in the dashboard, and some of Bonnie Patrick's hair on the right-hand side of the dashboard.

Bonnie Patrick had severe facial lacerations extending from the right cheek across the base of the nose to the left forehead, and also extending down on the right side of the nose to the tip of the nose, with multiple fractures of the underlying bones, and a rupture of the right eye, with an open wound extending into the front part of the brain. Dr. L. C. Smith testified that she did, to his knowledge, have no chest injuries. She died on 26 December 1954. There is no evidence that she ever spoke after the wreck.

During the early morning of 24 December 1954 the coroner of the county, Dr. V. M. Long, examined the dead body of Donald Wilson. His examination showed that Donald Wilson had a broken neck, a crushed chest, a broken right femur and a dislocation of the left hip joint, and in his opinion these injuries caused Donald Wilson's death.

State Highway Patrolman C. N. Jones examined the Oldsmobile automobile about 1:00 a.m. on 24 December 1954. The front end was completely demolished. The tree made a half-moon of the front bumper, and went back in the motor and in between the right front wheel. The motor was pushed back some. The back seat was pulled loose, and brought forward, and the front seat was brought forward almost as far as it could possibly go. The dash on the right side was considerably bent in. The right half of the windshield was gone, and the lower half of the steering wheel was bent downward. In this car the glove compartment was on the extreme right-hand side of the dash. The dent in the dash was from the center to the right side. There was a portion of fine glass and blood and some hair in the dent, but the Patrolman did not know whose hair it was. When the Patrolman reached the wreck no one was in the car.

Plaintiff alleges in his complaint that Donald Wilson was driving his automobile at the time it crashed into the tree, causing the death of Bonnie Patrick and himself. The defendant denies this in his answer, and alleges, upon information and belief, that at such time Bonnie Patrick was driving the automobile.

Plaintiff's counsel states in his brief that he is relying on the rule "that an owner present in his automobile at the time of a collision is presumed to be in control of his automobile by himself or through some other person, and, if there be no direct proof as to the driver of the automobile, the owner will be presumed to have been driving." The brief immediately thereafter states, "lamentably, this Court has not heretofore adopted the foregoing rule, and no case has been found wherein this Court has considered the rule."

Plaintiff relies on this language in *Rodney v. Staman,* 371 Pa. 1, 89 A. 2d 313, 32 A.L.R. 2d 976: "As to the appellant's contention that there is no evidence that the husband was driving the automobile at the time of the accident, there is evidence that he was the owner of the car. That fact affords a rebuttable presumption that he was the driver of the automobile at the time of the accident." Purdon's Penn. Statutes, Anno., Per. Ed., Vehicle Code, Title 75, Sec. 739, provides that "in any proceeding for a violation of the provisions of this act or any local ordinance, rule or regulation, the registration plate displayed on such vehicle shall be *prima facie* evidence that the owner of such vehicle was then operating the same." The Court based the rebuttable presumption on this statute.

Plaintiff in his brief quotes from the dissenting opinion in *Welty's Estate v. Wolfe's Estate,* 345 Mich. 408, 76 N.W. 2d 52, as follows: "The car in which both men died was a Pontiac. It belonged to defendant's decedent Wolfe. That fact gives rise to a rebuttable presumption that he was driving at the time." The sole authority cited to support such statement is the Pennsylvania case of *Rodney v. Staman.*

Plaintiff in his brief quotes from *Drahmann's Adm. v. Brink's Adm.,* (Kentucky Court of Appeals), 290 S.W. 2d 449, as follows: "Other jurisdictions have held that a rebuttable presumption or inference arises that the defendant was driving upon proof of the defendant's ownership of the automobile or upon proof that he was driving shortly prior to the accident." The only authority cited is the Pennsylvania case of *Rodney v. Staman.*

There is an annotation to *Rodney v. Staman* in 32 A.L.R. 2d 988, *et seq.,* entitled "Proof, in absence of direct testimony by survivors or eyewitnesses, of who, among occupants of motor vehicle, was driving it at time of accident." This annotation states this in effect that the principle of a rebuttable presumption set forth in the Pennsylvania case of *Rodney v. Staman* has been applied or recognized in Iowa, Michigan, Ohio and South Dakota. Then the annotation sets forth cases which hold that one who was shown to be driving an automobile shortly prior to an accident is presumed to have continued as driver, a principle that needs no consideration in the instant case, because there is no evidence that Donald Wilson was driving his car shortly prior to the accident.

"Considerable legal controversy has developed over the extent to which presumptions may follow proof of ownership." Blashfield's Cyc. of Auto. Law and Practice, Vol. 9B, p. 528. See also 5 Am. Jur., Automobiles, Sec. 611.

The General Assembly in 1951 enacted G.S. 20-71.1, which is entitled "Registration evidence of ownership; ownership evidence of defendant's responsibility for conduct of operation." This statute was probably enacted in view of the decision in *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d 586. *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309. G.S. 20-71.1 does not provide that proof of ownership of an automobile, or proof of the registration of an automobile in the name of any person, shall be *prima facie* evidence that the owner of the automobile, or the person in whose name it was registered, was the driver of the automobile at the time of a wreck.

We decline the suggestion of plaintiff's counsel to adopt a rule holding that upon the facts of the instant case a rebuttable presumption or inference arises that Donald Wilson was driving his automobile at the time of the fatal crash. Whether or not a rule as contended for by plaintiff should be adopted in this jurisdiction is a matter for the General Assembly.

In order to recover plaintiff must establish that Donald Wilson was negligently driving his automobile at the time of the wreck, and that his negligence was a proximate cause of his intestate's death.

There is no direct evidence that Donald Wilson was driving his automobile shortly prior to the wreck, and no direct evidence that he was driving his automobile at the critical moment. Is there sufficient evidence, considered in the light most favorable to the plaintiff, to carry the case to the jury that Donald Wilson was driving his automobile at the time of the wreck?

The first man at the scene of the wreck was H. W. Holton, who heard the crash. When he arrived, Bonnie Patrick and Donald Wilson were in the front seat with the back seat thrown up on top of them against the windshield. Donald Wilson was on the right side of the front seat with his head partially out of the windshield. Bonnie Patrick was to his left with her head lying on the switch key and the steering column. Her left arm was up over the steering wheel, hanging onto it, and she was sort of down with her head against the rod of the steering wheel, and her left hand was over the steering wheel. A pool of blood was directly under the switch key where her head was resting. Her right foot was under the gas pedal from the right side, and her left foot was to the left of the steering column. A woman's shoulder bag was hanging on the window latch of the left door. The steering wheel of the automobile was on the left side. The switch key was just a few inches to the right of the steering column.

The dashboard on the right side of the automobile was considerably bent in. The right half of the windshield was gone, and the lower half of the steering wheel was bent downward.

Bonnie Patrick was unconscious, and died later without speaking. Donald Wilson was dead or unconscious. Their bodies were taken out on the right side of the automobile. Some of Bonnie Patrick's hair was found on the right-hand side of the dashboard. Did her hair get on the dashboard when the automobile hit the tree at terrific speed, or when her body after the collision was taken out on the right side of the automobile? Any answer would be a pure guess.

Donald Wilson received in the collision a crushed chest. The dent in the dashboard was on the right side, and his body was found on the right side with his head partially out of the broken windshield. Bonnie Patrick, so far as the doctor knew, had no chest injuries.

When in a case like this, the plaintiff must rely on the physical facts, and other evidence, which is circumstantial in nature, to show that Donald Wilson was driving the automobile at the time of the wreck, he must establish attendant facts and circumstances which reasonably warrant such inference. *Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670. Such inference cannot rest on conjecture or surmise. *Sowers v. Marley, supra.* "The inferences contemplated by this rule are logical inferences reasonably sustained by the evidence, when considered in the light most favorable to the plaintiff." *Whitson v. Frances, supra.* "A cause of action must be something more than a guess." *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411. A resort to a choice of possibilities is guesswork, not decision. *Hanrahan v. Walgreen Co.,* 243 N.C. 268, 90 S.E. 2d 392. To carry his case to the jury the plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts.

When the automobile struck the tree at tremendous speed, and the front seat was brought forward almost as far as it could possibly go, and the back seat was pulled loose and thrown up against the windshield on top of the occupants of the front seat, it would seem that there was no opportunity for the occupants of the front seat to have changed the position in which they were sitting immediately prior to the crash. It would further seem that the crash hurled Donald Wilson's head partially out of the windshield on the right side and with his head in that position his body could not have changed from the posi-

PARKER *v.* WILSON.

tion it was in immediately prior to the collision with the tree. It would seem that all the evidence tends to show that Bonnie Patrick was driving the automobile at the time of the fatal wreck. But regardless of that, suffice it to say that considering all the evidence in the light most favorable to the plaintiff, we conclude that the plaintiff has not offered sufficient evidence to go to the jury that Donald Wilson was driving the Oldsmobile automobile at the time of the fatal collision. The judgment of nonsuit below is

Affirmed.

HIGGINS, J., dissenting. The evidence is plenary that the driver of the car was negligent and that that negligence proximately caused the death of both occupants. I think the evidence sufficiently indicates that Donald Wilson was the driver to require the submission of appropriate issues to the jury.

Wilson was the owner of the car. He called at her boarding-house for Bonnie Patrick. They left together in his car between nine and ten at night on December 23, 1954. The fatal wreck occurred a few minutes after 12 that night. The evidence with respect to the wreck is fairly stated in the opinion of the Court. The question is: Which of the occupants was the driver?

There is no evidence Miss Patrick had ever driven Wilson's car, or even that she knew how to drive. Wilson had a broken neck, crushed chest, broken right femur, and dislocation of the left hip joint. Miss Patrick had severe facial lacerations extending across the base of her nose to her left forehead, with multiple fractures of the underlying bones, a rupture of the right eye, and an open wound extending into the front of the brain. She had no chest injuries. The lower half of the steeringwheel was bent downward.

It would seem natural and probable that the driver held on to the steeringwheel until the crash and that the body or chest of the driver would be hurled against the steeringwheel and the neck snapped. Wilson's chest was crushed and his neck broken. Miss Patrick had only head—no chest or neck injuries. There was a dent in the instrument board near the center and blood and brown hair imbedded. Miss Patrick had brown hair. Wilson's hair was black.

The tremendous speed of the car and the violence of its impact into the tree certainly could have reversed the positions of the driver and the passenger. I think the problem as to which was the driver and which was the passenger should be settled

by a jury as an issue of fact, and not by the Court as a question of law.