AGGIE NEIL MAYNOR v. WILLIAM J. TOWNSEND, ADMINISTRATOR OF THE ESTATE OF BERLINE CARTER

No. 68SC63

(Filed 14 August 1968)

1. Death § 7—  wrongful death — damages

   The Wrongful Death Act does not permit the recovery of nominal or punitive damages, but limits recovery to the net pecuniary loss to decedent's estate resulting from the death.

2. Death § 7—  wrongful death — evidence of pecuniary loss

   While plaintiff must offer some evidence tending to show that decedent was potentially capable of earning money in excess of that which would

be required for her support, direct evidence of earnings is not essential, it being sufficient to present evidence of decedent's health, age, industry, means and business.

**3. Death § 7— wrongful death — damages — sufficiency of evidence**

In a wrongful death action, evidence that at the time of the accident causing her death decedent was thirty years old, that she was in good health, and that she was able to take care of her five children and do house work and farm work *is held* sufficient to be submitted to the jury on the question of pecuniary loss to decedent's estate.

**4. Automobiles § 66— identity of driver — presence of owner**

The presence of the owner in his car at the time of a wreck raises no presumption that he was the operator.

**5. Automobiles § 66— identity of driver — type of evidence**

The identity of the driver of an automobile involved in a wreck may be established by any combination of circumstantial and direct evidence.

**6. Automobiles § 66— identity of driver — conflicting evidence — jury issue**

In a counterclaim for wrongful death arising out of an automobile accident, where defendant presented evidence that on the day after the accident plaintiff had stated that she was driving the automobile at the time of the accident, but plaintiff testified that she had never operated a car, did not know how to operate a car, had no driver's license, and that defendant's intestate was operating the car when the accident occurred, and plaintiff presented numerous witnesses who testified that they had never seen plaintiff drive a car, a question of fact as to who was driving the car is raised for the jury.

**7. Death § 3— wrongful death — burden of proof**

The party seeking recovery in a wrongful death action has the burden of proving actionable negligence.

**8. Death § 3; Trial § 23— wrongful death — sufficiency of evidence — prima facie case**

In an action for wrongful death, motion for nonsuit should be denied when the evidence offered by both plaintiff and defendant, construed in the light most favorable to plaintiff, is sufficient to make out a *prima facie* case of actionable negligence.

**9. Automobiles § 44— wrongful death — automobile leaving road without collision — sufficiency of evidence**

In a counterclaim for wrongful death, evidence tending to show that defendant's decedent was a passenger in an automobile operated by plaintiff, that upon entering a curve the automobile swerved into the oncoming traffic lane, crossed back over its proper lane, traveled along the shoulder of the road, and then struck a bank and entered a ditch, *is held* sufficient to make out a *prima facie* case of negligence on the part of plaintiff in the operation of the car.

10. **Automobiles §§ 66, 91— identity of driver — negligence — separate issues submitted**

In an action for wrongful death arising out of an automobile accident in which the identity of the driver is in dispute, separate issues should be submitted to the jury with respect to the identity of the driver and negligence.

11. **Automobiles §§ 44, 50; Trial § 23— prima facie showing of negligence — explanation by defense — jury question**

In an action for wrongful death arising out of an automobile accident in which plaintiff has made out a *prima facie* case of actionable negligence by showing that the automobile failed to negotiate a curve, it is for the jury to determine the issue of actionable negligence by weighing against the plaintiff's *prima facie* case any evidence in explanation offered by defendant, including evidence that the automobile had slick tires and that the highway was wet.

APPEAL by defendant from *McKinnon, J.,* 9 October 1967 Session ROBESON Superior Court.

Plaintiff instituted this action on 22 September 1966, alleging that on 7 February 1964 she was a passenger in a 1956 Ford operated by defendant's intestate and was injured when, due to intestate's negligent operation of the automobile, it left the road and went into a ditch. Plaintiff sought to recover $75,000.00 for serious and permanent injuries.

Defendant answered, denying the allegations of negligence and alleging that plaintiff, and not defendant's intestate, was the operator of the automobile. As a defense in bar, defendant further alleged that the automobile was registered in plaintiff's name and that, even if it should be determined that defendant's intestate was operating the automobile at the time of the accident, the plaintiff was contributorily negligent in that she had the right to direct, and was directing, the operation of the car at the time of the accident; further, that any negligence on the part of defendant's intestate was imputed to plaintiff.

Defendant further alleged, by way of counterclaim, a cause of action against plaintiff to recover damages in the amount of $50,-000.00 for the wrongful death of defendant's intestate, alleging that the wreck was caused by the negligence of the plaintiff in operating the car and that the defendant's intestate, who was thirty years of age and in good health prior to the wreck, was killed as a result of it.

Plaintiff replied, denying the material allegations of the counterclaim, except with respect to decedent's health at the time of the wreck, and praying for dismissal of the counterclaim and recovery on her original cause of action for damages for her personal injuries.

At trial, the parties stipulated that plaintiff was injured and defendant's intestate killed as the result of the wreck.

Testifying for the plaintiff, Highway Patrolman Kimball's evidence tended to establish these circumstances surrounding the wreck: U. S. Highway 301-A, a two-lane highway of either asphalt and gravel or tar and gravel, runs north from Lumberton toward Fayetteville. At a point about two miles north of Lumberton, the highway curves toward the west, or left, and the Barker Ten Mile Road goes off toward the east, or right. The apex of the curve is just north of the Barker Ten Mile Road intersection. On the east or right-hand side of the highway, the shoulder is seven and one-half to eight feet wide and leads to a ditch about two feet deep, behind which is a bank going up. The speed limit in this area is 55 miles per hour.

On the evening of 7 February 1964, when Officer Kimball arrived at the scene, he found the following: It was raining and the highway was wet. Four hundred feet north of the intersection of Barker Ten Mile Road and 301-A, a 1956 Ford automobile was in the ditch on the east side of the highway with the front facing southward, back toward Lumberton. Faint tire marks were visible on the surface of the road, beginning in the northbound lane, crossing the center line into the southbound lane, recrossing into the northbound lane and running up to the edge of the highway 129 feet or more from where they began. The marks continued from the edge of the road onto and along the east shoulder in the form of disturbed grass and dirt leading in a northerly direction for a distance of approximately 129 feet, continuing up to the rear of the vehicle. In addition, for a distance of 75 feet from the vehicle southward, the bank beyond the ditch was "scarred" with "grass . . . pulled out of the ground; the area wiped clean or the grass pushed over and leaning in the direction of Fayetteville." The car itself was damaged "along the complete left side" and had one or more slick tires. The occupants of the automobile were being removed from the scene when Officer Kimball arrived.

At the close of the plaintiff's evidence, defendant's motion for nonsuit was denied and, thereafter, the parties announced that they had reached a settlement with respect to plaintiff's cause of action.

The defendant then proceeded with evidence relevant to his counterclaim. His evidence tended to show that on the day after the wreck, the plaintiff made the statement that she (plaintiff) was driving the car at the time of the wreck.

Plaintiff, in rebuttal, again took the stand and testified that the

defendant's intestate was driving at the time of the wreck and that just before the wreck, she (defendant's intestate) was "working the windshield button."

At the close of all the evidence, plaintiff's motion for judgment as of nonsuit was granted. From that judgment, defendant appeals, assigning as his only error the allowance of that motion.

*Bryan, Bryan & Johnson, attorneys for plaintiff appellee.*
*William J. Townsend, attorney for defendant appellant.*

BRITT, J.

In determining the propriety of the court's allowance of the motion for nonsuit of defendant's counterclaim, the question arises as to the sufficiency of the evidence to be submitted to the jury on three crucial points: (1) Whether there was pecuniary loss to the estate of the defendant's decedent; (2) Whether the plaintiff was the driver of the automobile; and (3) Whether the plaintiff was actionably negligent. We will discuss the points in the order listed.

(1)  Was the evidence sufficient to present a jury question with respect to whether there was a pecuniary loss to the estate of defendant's decedent?

It was established in the pleadings — alleged by the defendant and "not denied" by the plaintiff — "[t]hat prior to said automobile accident Berline Carter was in good health and was thirty (30) years of age, being born on May 10, 1933, and as a result of said automobile accident received injuries resulting in her death." At the trial, the decedent's husband, Wade Lee Carter, testified that his wife "was in good health" at the time of the accident and able to take care of their five children and keep house; that she was able to do "house work" and "most any kind of farm work. She was raised on a farm."

[1, 2]  On these facts, the evidence of pecuniary loss to the estate of Berline Carter was sufficient to require submission to the jury. Recovery under the North Carolina Wrongful Death Act, G.S. 28-173, 174, is limited by § 174 to "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." Thus, the statute permits recovery of neither nominal nor punitive damages and the burden is on the party seeking recovery "to prove that the estate of his intestate suffered a net pecuniary loss as a result of her death." *Greene v. Nichols,* 274 N.C. 18, 161 S.E. 2d 521. Direct evidence of earnings is not essential, it being sufficient to present evidence of "health, age, industry, means and business," *Reeves v. Hill,*

272 N.C. 352, 158 S.E. 2d 529, but "it is required that plaintiff offer some evidence tending to show that intestate was potentially capable of earning money in excess of that which would be required for her support." *Greene v. Nichols, supra.* See also *Stetson v. Easterling,* 274 N.C. 152, 161 S.E. 2d 531.

[3]     Here, evidence of the decedent's age, general health and capacity to work was sufficient to present a question for the jury with respect to the question of damages.

(2)     Was the evidence sufficient to present a jury question with respect to whether the defendant's decedent was driving the automobile at the time of the wreck?

This issue drew the sharpest conflict in the evidence adduced at the trial. No less than eight witnesses, who knew the plaintiff Aggie Maynor as relatives, friends and neighbors in Saint Pauls, and whose periods of acquaintance ranged from three to 15 or 20 years, testified in her behalf that they had never seen her drive a car. Some of the witnesses testified to having seen Aggie Maynor and Berline Carter in the 1956 Ford, always with Berline driving.

Plaintiff herself took the stand and testified that she had never owned a car, had never operated a car, did not know how to operate a car, and had no driver's license. She further testified that she had contributed about $200.00 toward the purchase price of the 1956 Ford on the understanding that Berline would take her places when she had to go. She further stated that on the night of the wreck, Berline was driving and she was a passenger in the front seat.

Defendant put on two witnesses who testified that they visited Aggie Maynor in the hospital on the morning of 8 February 1964, some twelve hours after the wreck. Mrs. Pauline Davis, a sister of Berline Carter, testified that while she was in Mrs. Maynor's room, in the presence of two other people: "I spoke to her; she spoke. I asked her who was driving and she said 'I was.' Then she changed the subject and said, 'We wasn't driving fast.' " Brady Locklear testified that he also visited plaintiff in the hospital on the morning of 8 February and that, in response to a question by his brother, Mrs. Maynor said that she was driving.

Dr. Biggs had testified earlier in behalf of the plaintiff that plaintiff was in such condition due to concussion and shock and other physical injuries that he was unable to administer anesthetic to her until 11 February. Plaintiff testified in rebuttal that she remembered seeing no one at the hospital on 8 February and knew nothing at all for three or four days after the wreck.

[4, 5]　　The presence of the owner in his car at the time of a wreck raises no presumption that he was the operator. *Greene v. Nichols, supra; Johnson v. Fox,* 254 N.C. 454, 119 S.E. 2d 185; *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258. But the identity of the driver at the time may be established by any combination of circumstantial and direct evidence. *Greene v. Nichols, supra.*

[6]　　Here, there was no evidence as to the positions of the two occupants after the wreck; apparently they were both thrown from the car. There was, however, direct evidence tending to show that defendant's intestate was driving and direct evidence tending to show plaintiff was driving. This conflicting evidence clearly raised a question of fact for the jury. *Myers v. Utilities Co.,* 208 N.C. 293, 180 S.E. 694.

(3)　　Was the evidence sufficient to present a jury question with respect to whether the plaintiff was actionably negligent?

[7, 8]　　The burden of proving actionable negligence in an action for damages for wrongful death grounded in negligence is, of course, on the party seeking recovery. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670. But if the evidence, that offered by both plaintiff and defendant, construed in the light most favorable to the party with the burden of proof, *Boyd v. Blake,* 1 N.C.App. 20, 159 S.E. 2d 256, is sufficient to make out a *prima facie* case of actionable negligence, a motion for nonsuit should be denied and the case submitted to the jury. *Mills, Inc. v. Terminal, Inc.,* 273 N.C. 519, 160 S.E. 2d 735.

The facts in the case at bar are similar to the facts in *Greene v. Nichols, supra,* which our Supreme Court held were sufficient to make out a case of actionable negligence. There, an automobile left the highway on a curve and crashed into a tree, killing all three occupants. There were no eyewitnesses. An action for wrongful death was brought by the administrator of one occupant against the administrator of another. At the trial, the plaintiff introduced no evidence tending to show why the car left the highway and, from a judgment of nonsuit, appealed to the Supreme Court. The Court held that the evidence was sufficient to present a jury question with respect to whether defendant's intestate was the driver of the car. Then, reviewing prior decisions in this jurisdiction, and other authority, the Court held that the evidence was sufficient to present a jury question with respect to the actionable negligence of the defendant's intestate. Sharp, J., writing for the majority, explained the Court's reasoning:

"It is generally accepted that an automobile which has been traveling on the highway, following 'the thread of the road,'

MAYNOR *v.* TOWNSEND

does not suddenly leave it if the driver uses proper care. Such an occurrence is an unusual event when the one in control is keeping a proper lookout and driving at a speed which is reasonable under existing highway and weather conditions. * * * The inference of driver-negligence from such a departure is not based upon mere speculation and conjecture; it is based upon collective experience which has shown it to be the 'more reasonable probability.' * * *

"When a motor vehicle leaves the highway for no apparent cause, it is not for the court to imagine possible explanations. *Prima facie,* it may accept the normal and probable one of driver-negligence and leave it to the jury to determine the true cause after considering all the evidence — that of defendant as well as plaintiff."

The Court concluded that, on the basis of this rationale, the plaintiff had made out a *prima facie* case of actionable negligence.

[9]    In the instant case, the evidence, in the light most favorable to the defendant, tends to show these facts: On the evening of Friday, 7 February 1964, the defendant's decedent was a passenger in an automobile being operated by the plaintiff. Traveling north toward Fayetteville on U. S. 301-A, the car came to a left-hand curve about two miles north of Lumberton. As it went into the curve, the car swerved across the center line into the southbound lane, came back into the northbound lane, left the pavement on the right-hand side, traveled along the shoulder, struck the bank beyond the ditch, and finally came to rest facing back toward Lumberton, at least 258 feet from where it first began to swerve.

[10, 11]    The jury should first consider the issue of who was driving the car. If it concludes, as plaintiff's evidence tended to show, that defendant's decedent was the driver, then the issue of negligence will not be reached. But if it finds that plaintiff was the driver, as defendant's evidence tended to show, then it must determine the issue of actionable negligence, weighing against the defendant's *prima facie* case any evidence in explanation offered by the plaintiff, including the evidence which tended to show that the car had slick tires and that the highway was wet. It would seem that separate issues should be submitted with respect to the identity of the driver and negligence.

* * * * * *

We conclude that in the light of *Greene v. Nichols, supra,* filed

on 14 June 1968 — since the trial of the case at bar — defendant was entitled to have a jury pass upon his counterclaim.

The judgment of compulsory nonsuit to the counterclaim is Reversed.

CAMPBELL and MORRIS, JJ., concur.