STATE OF NORTH CAROLINA ON RELATION OF CHARLIE GARLAND, ADMINISTRATOR OF THE ESTATE OF MOSES GARLAND, DECEASED, v. MARY F. GATEWOOD, ADMINISTRATRIX OF J. Y. GATEWOOD, DECEASED, TOM BUCK, DEPUTY SHERIFF, PRIVATE J. R. HARRIS, STATE HIGHWAY PATROLMAN, NATIONAL SURETY CORPORATION AND ST. PAUL MERCURY INDEMNITY COMPANY.

(Filed 9 March, 1955.)

**1. Negligence § 17—**

In an action to recover for negligence, the burden rests on plaintiff to establish a negligent act or omission and that such act or omission proximately caused the injury or death.

**2. Negligence § 9—**

In order to be actionable, negligence must constitute the proximate cause of injury, and foreseeability is an essential element of proximate cause.

**3. Convicts and Prisoners § 4—Any negligence in failing to take proper precaution to prevent escape held not proximate cause of prisoner's death from being struck on railroad tracks.**

The evidence tended to show that after intestate was arrested, handcuffed, and placed in a patrol car, he was left unattended in a drunken state, that he left the car, that after being apprised of his departure, the officers failed to look for him, that he went to a filling station and asked

to be taken to his employer's house for the purpose of arranging bail but was refused, and that his mutilated body was found the next morning on the railroad tracks between the filling station and his employer's house. *Held:* Even conceding that the officers were negligent in failing to guard intestate, or in failing to search for him immediately when they heard he had escaped, or in any other respect, such negligence was not the proximate cause of intestate's death, since the circumstances resulting in intestate's death were not reasonably foreseeable.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sharp, Special Judge,* October Civil Term 1954 of CASWELL.

Civil action to recover damages for the alleged wrongful death of plaintiff's intestate.

Plaintiff's evidence tended to show the following facts: About 8:00 or 8:30 p.m. on 8 August 1952 plaintiff's intestate Moses Garland was arrested without a warrant by Deputy Sheriff Tom Buck and State Highway Patrolman J. R. Harris on a charge of public drunkenness. At the time of his arrest Moses Garland was standing outside of a filling station located at the intersection of N. C. Highways 57 and 119 in Semora. Garland was handcuffed by Buck, and placed in Harris' patrol car, which was parked near the filling station. They told him to stay in the car. The officers then proceeded to check traffic: they stood in about the middle of the highway in front of the filling station twenty-five feet from the car in which Garland was.

In a brief time after the officers left Garland, he got out of the car, and was seen going along Highway 119. The officers were told Garland was out of the car. Buck said: "It don't make any difference; we'll get him." They did not look for him. One witness said Garland "did not walk too good anyhow."

Victoria McCain lives at Semora. About 9:00 p.m. this night she saw Garland in her yard. He was drunk, and had handcuffs on. He said he was looking for someone to carry him to his employer Mr. Fuller, because he wanted him to stand his bail so he would not have to spend the night in jail. Victoria McCain told him to go back to the filling station, and get Buck to carry him to Mr. Fuller.

Between 9:00 and 9:15 p.m. this night Garland came to Willard Brandon's filling station, located on Highway 57 just a little west from the filling station where he was arrested. He was still handcuffed. About 50 yards back of Brandon's filling station is the railroad track of the Atlantic and Danville R. R. Company. Mr. Fuller lives in Semora northeast of Brandon's filling station; and a person would have to cross the railroad track from Brandon's place of business to get to his house. Gar-

land asked Brandon to carry him to Fuller, and he refused to do so. When Garland left Brandon's, he went across Highway 57 away from the railroad track.

On the following morning Moses Garland was found dead on the railroad tracks of the Atlantic and Danville R. R. Co. near the depot at Semora. His mutilated body was scattered along the tracks for a distance of 30 to 40 feet, with the handcuffs on his wrists. The crew of the morning train saw the mutilated body upon arrival. The body was about one-quarter of a mile from where Garland was arrested and from Brandon's filling station. A train was scheduled to pass over the railroad tracks about 9:40 p.m. on 8 August 1952.

At the close of the plaintiff's evidence, the court allowed defendants' motions for judgment of nonsuit.

From the judgment of involuntary nonsuit the plaintiff appeals, assigning error.

*C. O. Pearson, E. H. Gadsden, and William A. Marsh, Jr., for Plaintiff, Appellant.*

*John W. Hardy for J. R. Harris.*

*Jordan & Wright and Charles E. Nichols for St. Paul Mercury Indemnity Company.*

PARKER, J. This case is based on negligence. The burden rests on the plaintiff to produce evidence sufficient to establish the two essential elements of actionable negligence: one, that the defendants were guilty of a negligent act or omission; and two, that such act or omission proximately caused the death of decedent. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670.

"Negligence does not create liability unless it is the proximate cause of injury, and foreseeability is an essential of proximate cause." *Wood v. Telephone Co.,* 228 N.C. 605, 46 S.E. 2d 717.

Moses Garland had not been in the custody of the officers for sometime before he was killed. Cases concerned with injuries to prisoners while in *custody* of a sheriff or officer of the law, like *Dunn v. Swanson,* 217 N.C. 279, 7 S.E. 2d 563, are not in point. Did he step in front of the train, did he attempt to board a moving train, or was he down on the railroad tracks, when struck? The evidence gives no answer. Had he partially or practically sobered up before death? We do not know, for the Record is silent as to the hour of his death. The exact circumstances of his death are left in the realm of speculation and conjecture. Even if we concede, which we do not, that the officers were negligent in not locking the doors of the patrol car to prevent Garland getting out, or in not keeping him guarded in the car, or in not searching immediately for him when they

heard he had escaped, or in any other respect, we are of opinion, and so hold, that such negligence was not a proximate cause of Moses Garland's untimely death, that is "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84.

There was no error in entering the judgment of nonsuit, and it is therefore

Affirmed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.