FREDERICK NAPOLEON LANE, ADMINISTRATOR OF THE ESTATE OF SYLVESTER MOORE, DECEASED, v. ELIZABETH BRYAN.

(Filed 17 April, 1957.)

**1. Death § 3—**

   In an action for wrongful death, the burden is on plaintiff to establish that defendant was guilty of a negligent act or omission and that such act or omission proximately caused the death of his intestate.

LANE v. BRYAN.

**2. Negligence § 5—**

The only negligence of legal importance is negligence which proximately causes or contributes to the death or injury under judicial investigation.

**3. Negligence § 19b(4)—**

Actionable negligence may be established by circumstantial evidence, either alone or in combination with direct evidence.

**4. Same: Trial § 23e—**

In order to be sufficient, circumstantial evidence must tend to establish the fact in issue as an inference based on facts established by clear and direct proof, since an inference may not be based on an inference.

**5. Trial § 23a—**

If the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than a basis for speculation and conjecture, it is insufficient to be submitted to the jury.

**6. Automobiles § 411: Negligence § 3½—**

The doctrine of *res ipsa loquitur* does not apply to establish the negligence of the driver of a car along a highway as a proximate cause of the death of a person whose body is thereafter found on the highway with fractured skull, crushed chest and fractured legs.

**7. Automobiles § 411—Evidence held insufficient to establish negligence of defendant as proximate cause of pedestrian's death.**

The evidence tended to show that intestate was seen walking normally in a westerly direction on the northern side of a paved road, that shortly thereafter his body was seen lying prostrate on the southern side of the road, and sometime later was seen lying prostrate on the northern side of the road, at which time a car was seen to run over the body. The evidence further tended to show that sometime during this period defendant was driving her car east, saw a person in the road and thought he moved, that she was unable to stop and that her bumper hit the body. An autopsy revealed that intestate's skull was fractured, chest crushed and legs fractured. *Held:* The evidence leaves in the realm of conjecture, surmise and speculation whether the alleged negligent act or omission on the part of defendant was the proximate cause of the death of intestate, and nonsuit was correctly entered.

APPEAL by plaintiff from *Joseph W. Parker, J.,* November Civil Term 1956 of LENOIR.

Action by administrator to recover damages for an alleged wrongful death.

An asphalt road 18 feet wide, with 8 feet shoulders, runs from Mewborn's Crossroads west to Dawson's Station. About dusk dark on the afternoon of 12 December 1953, and about 25 or 30 minutes before his death, Sylvester Moore, plaintiff's intestate, a man 31 years old, was 'seen walking normally on his right hand side of this road about 300 to

400 yards from where he was killed, headed west in the direction of his home. At that time it was drizzling rain.

Plaintiff introduced and read into evidence the adverse examination of Elizabeth Bryan, the defendant. This is the substance of her testimony. About 6:30 p.m. on 12 December 1953, she was driving her 1952 Dodge automobile east on a paved road in the direction of Mewborn's Crossroads and at a point about a mile west of it. She was asked did her car strike or run over Sylvester Moore. She replied: "My wheels didn't. As far as I know, the car could have, the bumper, but I don't know. I don't know whether I struck Sylvester Moore or not. I didn't hear any bump or feel any jolt. After the accident I slowed down, and I decided the best thing to do would be to get to the nearest telephone, and call the officers. I did that." She slowed down, and called the officers, because she saw him on the road and knew her car had passed over his body. She called the officers from Mr. Bizzell's at Mewborn's Crossroads, and returned to the scene. A group of people were there, including L. G. Pate, a Highway Patrolman. Immediately after the accident, she said she saw an object in the road, and thought it was a box. At the scene she told Patrolman Pate she was driving on her side of the road and saw something in the road, and as she got closer she saw it was a person down on the road in her path, and she thought he moved; she tried to stop her car, but couldn't by the time she reached him. She did not sound her horn. No repairs were made to her car as a result of the accident. At the scene she was told Sylvester Moore was dead.

On this evening—no exact or approximate time is stated—L. L. Barrow was driving his car west on this road toward Dawson's Station, carrying his wife to her aunt's home. It was raining, and he was going 35 to 40 miles an hour. He saw something lying on the road, and when he got "right side of it," he saw it was a person. "He kind of raised his head up and it looked like he had it propped on his hand." He was lying in the southern lane with his feet toward the shoulder of the road and his head toward the center line. From there Barrow drove a mile and a half to the aunt's, put his wife out, and without cutting off his engine went directly back to where he had seen the man lying on the road. He testified: "When I got there, there was a car coming up, and I pulled off on the shoulder of the road and it did too. I stopped my car about twice the length of the courtroom before I got to the man, and the other car run across the body. It was on his side of the road, and it ran across the body and pulled up and stopped, and about that time Miss Bryan and her sister—I don't know whether they were there or drove up, or how—they were there, but Miss Margaret got out and said, 'Will you go get Ralph?' I told her I would. I got on my car and went after him, and when I came back the Patrolman and all the people

were there. Miss Margaret is the sister of Miss Elizabeth. When I came back, the body was on the opposite side of the road. It was on the south side when I went on and when I came back it was on the north side. I was going east when I came back. As I stopped, someone passed over the body and that person stopped. I went and looked at the body and two boys did." After Barrow passed this person lying prostrate on the road, he testified on cross-examination as follows: "I took my wife and children about a mile and a half to her aunt's, put them out of the car and came right back. I don't know what happened between that time and the time I got back. I don't know how many cars passed. I met two, but there are two dirt roads before you get there. I don't know whether any of these cars ran over him or not."

Patrolman Pate arrived at the scene about a mile west of Mewborn's Crossroads before Sylvester Moore's body was removed from the road. This is in substance his testimony. The road is straight and level on each side of the place the body was lying in the northern lane of traffic for a good half mile. He reached the scene at 6:15 p.m. It was raining and dark: the visibility was bad. There he interviewed the defendant in her car. She said she was going 50 miles an hour. He asked her what happened, and she replied: "As she got near this man that his head raised up and she struck him with her bumper. . . . this subject or object was lying in the road and as she got near it, he raised his head and that the bumper of her car hit the subject." She made no statement as to how far she was from the object in the road when she first saw it. He examined defendant's car at the scene, and saw no mark on it.

The coroner of the county went to the scene. He saw there the dead body of Sylvester Moore. He detected no odor about him.

An undertaker saw the dead body in the road. He embalmed the body. He detected no odor of any alcoholic beverage. Sylvester Moore's skull was fractured, chest crushed and both legs fractured.

From a judgment of compulsory nonsuit entered at the close of plaintiff's evidence, upon motion of the defendant, plaintiff appeals, assigning error.

*Wallace & Wallace—By F. E. Wallace, Jr., for Plaintiff, Appellant.*
*Whitaker & Jeffress for Defendant, Appellee.*

PARKER, J. Plaintiff's alleged cause of action is for death by wrongful act based on negligence. The burden of proof rests upon plaintiff to produce evidence sufficient to establish the two essential elements of his alleged case: one, that the defendant was guilty of a negligent act or omission, and two, that such act or omission proximately caused the

death of his intestate. *Garland v. Gatewood,* 241 N.C. 606, 86 S.E. 2d 195; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670.

The only negligence of legal importance is negligence which proximately causes or contributes to the death or injury under judicial investigation. *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459; *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25; *Byrd v. Express Co.,* 139 N.C. 273, 51 S.E. 851.

Evidence of actionable negligence need not be direct and positive. Circumstantial evidence is sufficient, either alone or in combination with direct evidence. *Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879; *Kelly v. Willis,* 238 N.C. 637, 78 S.E. 2d 711. A basic requirement of circumstantial evidence is reasonable inference from established facts. Inference may not be based on inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption. *Whitson v. Frances, supra; Sowers v. Marley, supra.*

In *Sowers v. Marley, supra,* this Court said, speaking of circumstantial evidence in a death case: "An inference of negligence cannot rest on conjecture or surmise. Citing authorities. This is necessarily so because an inference is a permissible conclusion drawn by reason from a premise established by proof."                    .

This Court said in *Brown v. Kinsey,* 81 N.C. 245: "The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the Court will not leave the issue to be passed on by the jury." This has been quoted with approval in *Byrd v. Express Co., supra,* and in *Poovey v. Sugar Co.,* 191 N.C. 722, 133 S.E. 12, where *Brogden, J.,* the writer of the opinion, adds in apt and accurate words: "This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation." See *Mercer v. Powell,* 218 N.C. 642, 12 S.E. 2d 227; *Whitson v. Frances, supra.* "Cases cannot be submitted to a jury on speculations, guesses or conjectures." *Hopkins v. Comer,* 240 N.C. 143, 81 S.E. 2d 368.

*Byrd v. Express Co., supra,* was an action to recover damages for the death of plaintiff's intestate alleged to have been caused by defendant's negligence in failing to forward a package of medicine for the intestate, who was ill with typhoid fever. A motion of nonsuit was sustained as the evidence did not tend to show that the failure to receive the medicine caused the intestate's death. The Court said in respect to the evidence, "there is no room here for anything more certain than rank conjecture."

In *Currie v. Gen. Accident Fire & L. Assur. Corp.,* 241 Wis. 564, 6 N.W. 2d 697, the Court held in view of deceased's bad heart condition, there was not sufficient evidence produced to remove the cause of his

death, whether from heart disease or from accident, from the field of speculation and conjecture. The Court said: "A jury could do no more than guess at the cause of death, and this being so, there is no basis for recovery."

The doctrine of *res ipsa loquitur* is not applicable to the facts here. *Pemberton v. Lewis*, 235 N.C. 188, 69 S.E. 2d 512; *Etheridge v. Etheridge*, 222 N.C. 616, 24 S.E. 2d 477; *Springs v. Doll*, 197 N.C. 240, 148 S.E. 251.

The evidence presents a story filled with mystery. The sole evidence connecting defendant with the case comes from her own lips.

About dusk dark in a drizzling rain on 12 December 1953, plaintiff's intestate was seen walking normally on his right hand side of a paved road headed west, and about 300 to 400 yards from where he was killed. He was walking on the northern part of the road. There is no evidence he was drinking. Shortly thereafter, his body was seen lying prostrate on the southern side of the road by defendant and L. L. Barrow. Had he been struck or run over by a car? The evidence gives no answer. We are left to conjecture. The only evidence that he was not dead, when first seen by defendant and Barrow, is their evidence they saw a movement of the body.

After defendant's car passed over the body, she drove a mile to Mewborn's Crossroads, telephoned the officers, and returned to the scene. Barrow passed by the body, drove a mile and a half to his wife's aunt's home, put his wife out, and without cutting off his engine returned to the scene. Upon his return defendant was there. Did Barrow pass the body, and see him "kind of raised his head up and it looked like he had it propped on his hand," before or after defendant's car passed over the body? We can only guess, because the evidence affords no logical inference.

When Barrow returned the body was on the northern side of the road. How did it get from the southern to the northern side of the road? When Barrow stopped, he saw a car coming up, and this car ran across the body. Did the defendant's car kill plaintiff's intestate? Was he killed by the car which ran over him, when Barrow returned? Was he killed by being run over by a car between those times? How many times was he struck and run over? The wheels of defendant's car did not pass over the body. Could defendant's car in passing over the body fracture both legs and crush the chest?

It would be absurd to say the deceased was killed twice. *S. v. Scates*, 50 N.C. 420. Plaintiff has the burden of showing that the alleged negligent act or omission of the defendant proximately caused the death of his intestate. Considering plaintiff's evidence with the liberality we are required to do on a motion for nonsuit, we are of opinion that he has failed to produce any evidence from which a reasonable inference can

be drawn as to the proximate cause of his intestate's death. The evidence leaves it all in the realm of mere conjecture, surmise, and speculation, and one surmise may be as good as another. Nobody knows. A cause of action must be something more than a guess.

The judgment of nonsuit below is
Affirmed.