ZURICH INSURANCE COMPANY AND TRAVELERS INDEMNITY COMPANY v. MULTI-PLY CORPORATION
AND
HOME INSURANCE COMPANY v. MULTI-PLY CORPORATION
AND
GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LTD. v. MULTI-PLY CORPORATION

No. 6929SC518

(Filed 19 November 1969)

**1. Fires § 3— negligence in causing fire — presence of inflammables — sufficiency of evidence**

In this action by plaintiff fire insurers against the insured's tenant to recover for fire damage to the insured's building, plaintiffs' evidence is insufficient to be submitted to the jury on the issue of defendant tenant's negligence in causing the fire in question, where it tends to show only that defendant operated a plywood finishing plant in the building, that the fire began on a production line in defendant's plant, and that some 11 months prior to the fire several open drums of lacquer, a highly inflammable substance, were discovered in the production room upon inspection by the city fire department, which resulted in a recommendation by the fire department that empty lacquer drums be stored outside the building.

**2. Negligence § 1— negligence defined**

Negligence is the failure to exercise that degree of care for the safety of others or their property which a reasonably prudent man, under like

circumstances, would exercise, and may consist of acts either of commission or omission.

**3. Fires § 3— negligence in causing greater fire — accumulation of inflammables**

A defendant may be held liable for his accumulation of inflammables where it is in a place to which fire will foreseeably fall, leap, or be thrown by the defendant's operations, and fire is communicated to such inflammables which then cause a greater fire.

**4. Fires § 3— negligence in causing greater fire damage — presence of inflammables — sufficiency of evidence**

In this action by plaintiff fire insurers against the insured's tenant to recover for the destruction of insured's building by a fire which began on a production line of the plywood finishing plant which defendant operated in the building, plaintiffs' evidence, including opinion testimony that the fire would have been less intense if there had not been an overabundance of inflammable liquids inside the plant, *is held* insufficient to show that defendant was negligent in causing greater fire damage to the building than would have occurred had lacquer used in the plywood finishing process been properly stored, plaintiffs' evidence tending to show only that lacquer in the building was burned at some point during the fire, but failing to show that but for the presence of the lacquer the fire could and would have been extinguished at its source and that plaintiffs' damage would not have ensued.

APPEAL by plaintiffs from *Falls, J.*, at the 21 April 1969 Schedule "B" Civil Session of MECKLENBURG Superior Court.

The separate actions of the plaintiff insurance companies to recover damages from the insured's tenant under their right to subrogation were consolidated for trial. Plaintiffs insured a building leased to defendant and used by it to house a plywood finishing operation. The building was destroyed by fire on 16 May 1967.

Plaintiffs' evidence, including testimony of one of defendant's former officials, tended to show:

Defendant's plant operation consisted of converting unfinished plywood panels into prefinished building materials by a series of grooving and finishing processes. The plywood was moved along a production line approximately 350 feet long through machinery which coated it with lacquer and then dried the lacquer with forced air and infrared heat. The plywood was moved by hand at some points in the operation and by the machinery in others. The production line (four sets of machines of which three were in operation) was roughly in the center of the rectangular building, with crates of raw incoming plywood stacked up to fourteen feet high on one side of the building and finished outgoing plywood on the other. The coating process utilized rollers and overflow pans for the spillage of

lacquer which was pumped back for reuse. As lacquer is a volatile substance ("it is the fumes which burn"), a ventilating system was used to carry away the fumes. Fire fighting equipment located in the building included hand extinguishers and a foam system over the applicating machines. To avoid creation of sparks, employees wore rubber-soled shoes and used rubber hammers.

An inspection by Captain Prophet of the Charlotte Fire Department eleven months before the fire resulted in a letter dated 7 June 1966 to the Multi-Ply management regarding the presence of several open drums of lacquer in the production room and bad housekeeping in the form of soiled rags in the "sample testing room." He recommended that empty drums be stored outside the building and all soiled rags be put in metal containers. There was no further inspection; Captain Prophet testified that "[i]n my experience with Mr. Manus and Mr. Dickson [defendant's officials], I found them both to be cooperative and I cannot say whether all of my suggestions or some of them or any of them were carried out." Dickson, defendant's former vice-president called as a witness for plaintiffs, testified, "I am sure that all of these things were taken care of. We discontinued leaving empty drums and containers inside the building."

The drums were 55-gallon containers with a screw-type bung (or plug) which were used to bring the lacquer to the machines. One lacquer substance, "stock kilter," was piped in from an outside tank, but such a system was not used for lacquer in general because of the frequent changes in the exact color and type of finish used. Dickson explained, "You see, we ran possibly sixty different kinds of finishes so we were constantly changing." A pump would be attached to the drum in use at each machine and empty it of its contents in several hours. Two or three drums would be used for each machine in a day's time.

A fire of unknown origin broke out at approximately 9:15 on the morning of 16 May 1967. The only eyewitness to testify first saw it some unascertainable time after it began. He saw it on one of the production line machines. The employees almost extinguished the fire but it broke out again. The building was completely destroyed within about an hour and the fire smoldered in the plywood for about three weeks.

At the close of plaintiffs' evidence, defendant's motion for judgment as of nonsuit was allowed and from judgment predicated thereon, plaintiffs appealed.

*Craighill, Rendleman & Clarkson by Hugh B. Campbell, Jr., and Francis O. Clarkson, Jr., for plaintiff appellants Zurich Insurance Company, Travelers Indemnity Company and General Accident, Fire & Life Assurance Corporation, Ltd.*

*Welling, Miller, Gertzman & Goldfarb by George J. Miller for plaintiff appellant Home Insurance Company.*

*Ruff, Perry, Bond, Cobb & Wade by James O. Cobb and William H. McNair for defendant appellee.*

BRITT, J.

Plaintiffs contend that the trial court erred in granting defendant's motion for nonsuit for that (1) the defendant's negligence in causing the fire was sufficiently established by circumstantial evidence, and (2) the evidence was sufficient to show that defendant was negligent in causing damage substantially greater than would have been the case had due care been used in the handling and storage of the lacquer. We hold that the court did not err in granting the motion for nonsuit and will discuss plaintiffs' contentions in the order stated.

[1] (1) Plaintiffs' evidence failed to establish liability on the part of defendant for the initial fire first seen on the production line; the cause of the fire is unknown. We think the principles of law declared in *Phelps v. Winston-Salem*, 272 N.C. 24, 157 S.E. 2d 719, are applicable to the instant case. We quote the following from that opinion:

"* * * [I]t is not sufficient to show that the circumstantial evidence introduced *could* have produced the result — it must show that it *did*."

\* \* \*

"This is an 'unexplained fire.' Proof of the burning alone is not sufficient to establish liability, for if nothing more appears, the presumption is that the fire was the result of accident or some providential cause. There can be no liability without satisfactory proof, by either direct or circumstantial evidence, not only of the burning of the property in question but that it was the proximate result of negligence and did not result from natural or accidental causes. 5 Am. Jur. 2d, 836."

Plaintiffs heavily rely on the cases of *Hollar v. Telephone Co.*, 155 N.C. 229, 71 S.E. 316, and *Winkler v. Amusement Co.*, 238 N.C. 589, 79 S.E. 2d 185, in which cases the Supreme Court held that plaintiff owners introduced sufficient evidence of lessees' negligence

to survive motions of nonsuit. The case at bar is easily distinguishable from those cases. In *Hollar* pertinent facts do not appear in the opinion but a study of the record on appeal discloses that defendant's agents, after being cautioned not to do so, persisted in setting a kerosene burning lamp on a small shelf attached to a dry pine wall, that the lamp had scorched and "drawn paint" from the wall previous to the date of the fire, that on the night of the fire defendant's agent left the lamp burning on the shelf when he went to bed before 10:00 p.m., and around 2:00 a.m. the wall of the building was discovered on fire in the area where the lamp was situated; the circumstantial evidence was sufficiently strong to show that the lamp not only *could* have caused the fire damaging plaintiff's property but that it *did* cause the fire. In *Winkler* the evidence clearly showed that the fire which damaged plaintiff's building originated from a popcorn machine with an open-flame gas burner which defendant's agent left burning and unattended contrary to written instructions from the machine's manufacturer; the origin and cause of the fire were shown.

**[2]**    It is well established that negligence is the failure to exercise that degree of care for the safety of others or their property which a reasonably prudent man, under like circumstances, would exercise, and may consist of acts either of commission or omission. 6 Strong, N.C. Index 2d, Negligence, § 1, pp. 3 and 4, and cases therein cited. Chief Blackmon of the Charlotte Fire Department was called as a witness for plaintiffs and his testimony included the following: "The fact of the business is that it's just true that a wood refinishing plant, insofar as fire conditions are concerned, is just a hazardous business. * * * I think insurance rates are adjusted accordingly." Plaintiffs' evidence failed to show that defendant, in the type of operation it was engaged in, failed to perform as "a reasonably prudent man, under like circumstances."

**[4]**    (2) Plaintiffs contend that "had the lacquer been properly stored, that even if a fire did occur in the production line, that there would have been no damage or substantially less damage to the building." Plaintiffs give this theory form by relying heavily on the "spreading fire" cases. The frequency of fire loss to lands adjoining railroads led the court to establish several clear rules for liability, one of which provided as follows:

> "If fire escapes from an engine in proper condition, with a proper spark arrester, and operated in a careful way by a skillful and competent engineer, but the fire catches on the right of way, which is in a foul and negligent condition, and thence

spreads to the plaintiff's premises, the defendant is liable." *Moore v. R. R.,* 124 N.C. 338, 32 S.E. 710; *Aman v. Lumber Co.,* 160 N.C. 369, 75 S.E. 931.

The prototype "spreading fire" case preceding the era of extensive railroad litigation is *Garrett v. Freeman,* 50 N.C. 78, where an accumulation of trash, including a dead pine tree, lay between a fire (set to burn logs cleared from new ground) and an adjoining fence and timber tract. The court said, "In our case, the dead pine, which was rendered combustible by the dryness of the atmosphere, caused the fire to get out."

In *Lawrence v. Power Co.,* 190 N.C. 664, 130 S.E. 735, an electrical power transmission company was held liable to a landowner where an accumulation of dry grass and vegetation which spread the fire was ignited by molten fragments of an insulator cup which burned and fell because of lightning. The court said: "If the right of way beneath the tower had been free of inflammable matter, the moulten mass and fragments of the shattered insulator would have quickly cooled, and no harm would have resulted to plaintiff."

In *Maguire v. R. R.,* 154 N.C. 384, 70 S.E. 737, the court indicated the causal connection which the plaintiff must prove: "The burden rested upon the plaintiff to establish by competent evidence two facts alleged in her complaint: first, that the defendant negligently permitted combustible matter to accumulate on its right of way, and, second, that the defendant communicated fire from its engine to its foul right of way, which fire was thence communicated to the lands of the plaintiff."

[3]    The rationale seems to be that a defendant may be held liable for his accumulation of inflammables where it is in a place to which fire will foreseeably fall, leap, or be thrown by the defendant's operations; and in fact, fire is communicated to such inflammables which then cause a greater fire.

There is no direct evidence that the lacquer in controversy was ignited by the original fire at some point early enough in the conflagration to be anything more than a remote, rather that a proximate, cause. Proximate cause was defined succinctly in *Garland v. Gatewood,* 241 N.C. 606, 86 S.E. 2d 195, as "* * * a cause that produced the result in continuous sequence and without which it would not have occurred * * *." There is no direct proof that "but for" the presence of the lacquer drums the fire would not have spread. There was no direct evidence of an immediate explosion of the sort which would be expected if the initial fire had ignited the lacquer vapor.

ᵗ The mere presence of the combustibles will not be actionable; the origin and spreading of the fire must be explained if plaintiffs are to recover on the theory expressed in the "spreading fire" cases. In *Maharias v. Storage Co.*, 257 N.C. 767, 127 S.E. 2d 548, there was an unexplained fire. The plaintiff showed only that there was an accumulation of oily rags in the room from which the fire spread. The plaintiff alleged that his loss "was proximately caused by the negligence of defendant in permitting a pile of rags covered by highly inflammable fluid to accumulate." However, the court affirmed the nonsuit because "[a] cause of action must be based on something more than a guess."

In *Phelps v. Winston-Salem, supra,* the court followed the *Maharias* case, saying, "* * * Although there is evidence that the fire started in the vicinity of the Blalock tomato shed and its roof was cluttered with combustible and flammable materials, the only evidence relating to the cause of the fire is that it was 'unknown.'" Also in that case the plaintiff's sought to recover on the theory that the defendant was negligent in not furnishing fire fighting equipment for the building and that its absence allowed the fire to spread. The court restated the "classical textbook terminology" in its analysis of "causal connection" or proximate cause. The plaintiffs must prove that "but for the lack of fire fighting equipment, the fire could and would have been extinguished at its source, and plaintiffs' damage would not have ensued."

In the case at bar, plaintiffs must prove that but for the presence of the inflammables in controversy, the fire could and would have been extinguished at its source and plaintiffs' damage would not have ensued.

The plaintiffs' strongest evidence is the expert testimony of Fire Chief Blackmon. He was asked the following question by plaintiffs' counsel: "Chief, do you have an opinion satisfactory to yourself, as to whether or not this fire could have been contained and substantially less damage done to this building had this lacquer not been stored next to the assembly line?" After stating that "[t]his is conjecture on my part," Chief Blackmon gave his opinion: "I would say that the fire would have been less intense if there had not been, and what we would consider, an overabundance of flammable liquids inside the plant." Such evidence falls far short of the test for proximate cause.

The evidence tends to show merely that some lacquer was burned at some point during the fire. Some 15 or 16 drums were determined to have a lacquer odor about them after the fire. Liquid lacquer

was still in some of them. There was no evidence which tends to show how many barrels were open before the fire and thus were even capable of feeding the fire in its early stages. The evidence tends to show that of 32 drums in the building after the fire only approximately one-half of them were open in any fashion; of these two had an end removed to be used for trash containers, some had the bung (or plug) removed, and others were ruptured by an explosion which would have been brought on only by intense heat. There is no specific correlation between drums with openings and those which had the lacquer odor. Thus, there is not even circumstantial evidence of just what contribution the lacquer made to the fire. Evidently, some lacquer from the drums fed the fire, as did the plywood, lacquer in the production machinery and air from the outside; the obvious fact, however, that one substance was among others which were consumed in a fire does not make its presence a proximate cause of that fire.

Part of the rationale of the "spreading fire" cases seems to be that the presence of combustibles in a place where they may foreseeably be ignited is a failure to exercise due care. The evidence shows that defendant's management had taken numerous precautions but as Chief Blackmon declared, "* * * a wood refinishing plant, insofar as fire conditions are concerned, is just a hazardous business." Although evidence of the common usage in the business, as to installations, equipment and manner of operation, is "a proper matter for consideration in determining whether or not reasonable care has been exercised," *Watts v. Manufacturing Co.*, 256 N.C. 611, 124 S.E. 2d 809, it is conspicuously absent from the plaintiffs' argument here. A poor housekeeping report eleven months prior to the fire which showed a number of drums stored inside the building, some of which had the plugs removed, was offset by the evidence that "[w]e discontinued leaving empty drums and containers inside the building."

The barrel count after the fire revealed as many as 32 drums inside the plant but that number included 2 or 3 which contained water base latex, several which contained sand, several which contained sweeping compound, two for trash, two for rags, and several for lacquer thinner. The evidence tended to show that 15 or 16 may have contained lacquer and that the usual production routine would require one each for three machines and usually three more to keep the production line running when the first three became empty. It is not shown that the presence of five or so additional ones on hand was unreasonable, and again, it was not shown that those which are

claimed to be there unreasonably were a proximate cause of the destruction of the plant.

[4]    We hold that the evidence was not sufficient to show that defendant was negligent in the handling and storage of the lacquer thereby causing damage substantially greater than would have been caused under a reasonable and ordinary operation of such a finishing plant.

The judgment of the superior court dismissing the action as in case of nonsuit is

Affirmed.

BROCK and VAUGHN, JJ., concur.