IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-391

Filed 20 February 2024

Disciplinary Hearing Commission, No. 22DHC1

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

MICHAEL A. DEMAYO, Attorney, Defendant.

Appeal by Defendant from Order entered 20 January 2023 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 25 October 2023.

*The North Carolina State Bar, by Deputy Counsel Kathryn H. Shields and Katherine Jean, for Plaintiff-Appellee.*

*Womble Bond Dickinson LLP, by Raymond M. Bennett, James P. Cooney III and Jonathon D. Townsend, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Michael A. DeMayo (Defendant) appeals from an Order of Discipline by a Disciplinary Hearing Panel of the Disciplinary Hearing Commission (DHC) of the North Carolina State Bar (State Bar) entered on 20 January 2023. The Record before us tends to reflect the following:

Defendant, an attorney licensed by the State Bar, employed Ryan Valente (Valente) as an associate attorney at Defendant's law firm, DeMayo Law Offices. On

20 April 2020, Valente submitted his resignation from DeMayo Law Offices, effective 20 May 2020. Shortly after Valente's resignation became effective, on 22 May 2020, one of the firm's clients, K.D.[1], sent an email to DeMayo Law Offices requesting that her file be transferred to Valente. Defendant emailed K.D. to arrange a Webex meeting to discuss this request. In this email, dated 22 May 2020, Defendant wrote, in part:

> I must discuss a few items related and unrelated to your inquiries and will potentially have a negative impact on the outcome of your case. I am ultimately responsible for every client represented by our firm it's very important to me to have a very transparent and honest conversation with any client since my ultimate desire is not only trust and professionalism but that every client obtain the best economic results. Understand that I have no desire to sway or impact who ultimately represents you and any fee splits are already contractually confirmed but I do have an ethical and professional obligation to communicate a few items about your case.

A Webex meeting was arranged between Defendant and K.D. on 26 May 2020. K.D. recorded the meeting without Defendant's knowledge. During the recorded Webex meeting, Defendant stated:

> I'm not really sure what happened with him. I don't want to get into his personal life, but there was a divorce. There was a custody. There was a remarriage. There was a ex-wife dating one of the defense lawyers we go against all the time. So I'm sure all of that had some impact on his productivity, but notwithstanding, I'm not insensitive to my staff.

---

[1] The client is referred to by initials to protect the privacy of non-parties who were parties to the underlying legal proceedings.

Following the meeting, K.D. decided to have her case transferred to Valente. On or about 19 January 2021, K.D. settled her claim for $589,000.00. The attorney fees were $196,313.68. Following the settlement, Defendant and Valente disagreed on the division of attorney fees. Defendant informed Valente the DeMayo Law Firm would be pursuing a contractual claim to the attorney fees based on the client's contract and Valente's employment contract with the DeMayo Law Firm. Defendant claimed that the DeMayo Law Firm was entitled to 85% of the total attorney fees based on the contract. He then stated via email:

> For Settlement Purposes only, DLAW offers a time sensitive offer to resolve the division of attorney fees at a reduced rate of 75% of the total collected attorney's fees. The amount of $147,235,26 [sic] would be accepted in lieu of the total amount owed. To resolve this matter, please notify DLAW in three business days and all monies must be received by DLAW on 2-12-2021 by 5:00 pm. Failure to resolve this dispute at this stage will result in an immediate referral to outside counsel who will [sic] a Declaratory Judgment Action. In addition DLAW will ask outside counsel and Ethics Counsel to determine if sufficient grounds exist to refer this matter to the North Carolina State Bar, for taking over a case without the sufficient knowledge, skill and qualifications to properly handle same. DLAW seeks an amicable and quick resolution of this matter but will take all necessary steps to insure [sic] that a fair and equitable result occurs. DLAW has no immediate plans to pursue or include the client in any necessary subsequent legal actions. DLAW hopes you will accept this offer in the spirit in which it is offered. We look forward to your response.

In response, Valente informed Defendant via email dated 7 February 2021, he would invoke the doctrine of unclean hands to any claim pursued by Defendant citing various factors, including:

Attorney Michael DeMayo made false and untrue statements to [K.D.] after she made clear her intention to terminate representation and retain Ryan Valente as counsel by telling [K.D.] he was professionally and ethically required to have a conversation with her about items related and unrelated to her case that may negatively impact the outcome, in violation of the Rules of Professional Conduct.

On 8 February 2021, Defendant responded to Valente's allegation Defendant made false statements to K.D.:

As to mentioning your personal circumstances to this or any client, you are sadly mistaken. I personally was not aware of the severity and complexity of your personal struggles but they would have never been fodder or a topic of discussion with anyone much less a client.

On 9 February 2021, Valente filed a grievance with the State Bar. On 3 January 2022, the State Bar filed a Complaint against Defendant alleging two violations of Rule 8.4(d) and one violation of Rule 8.4(c).

On 20 January 2023, the DHC issued a written Order of Discipline against Defendant. The DHC found Defendant knew the statements he made to Valente in his email dated 8 February 2021, were false and concluded Defendant "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the Defendant's fitness as a lawyer in violation of Rule 8.4[ ](c)." The Order suspended Defendant's law license for one year with the suspension stayed for two years. On 3 February 2023, Defendant timely filed written Notice of Appeal.

## **Issues**

The dispositive issues on appeal are whether the DHC erred in: (I) finding

Defendant knowingly made false statements of fact; and (II) concluding Defendant's statements to Valente violate Rule 8.4(c) of the North Carolina Rules of Professional Conduct.

## Analysis

Appeals from a decision of the DHC are reviewed pursuant to the "whole record test." *N.C. State Bar v. Talford*, 356 N.C. 626, 632, 576 S.E.2d 305, 309 (2003) (citation and quotation marks omitted). The whole-record test

> requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law[.] Such supporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion. The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn. Moreover, in order to satisfy the evidentiary requirements of the whole-record test in an attorney disciplinary action, the evidence used by the DHC to support its findings and conclusions must rise to the standard of clear[, cogent,] and convincing. Ultimately, the reviewing court must apply all the aforementioned factors in order to determine whether the decision of the lower body, e.g., the DHC, has a rational basis in the evidence.

*Id.* at 632, 576 S.E.2d at 309-10 (alterations in original) (footnotes, citations, and quotation marks omitted). "However, the mere presence of contradictory evidence does not eviscerate challenged findings, and the reviewing court may not substitute its judgment for that of the committee." *N.C. State Bar v. Key*, 189 N.C. App. 80, 84, 658 S.E.2d 493, 497 (2008) (citations omitted). Thus, "[t]he 'whole record' test does not allow the reviewing court to replace the [Committee's] judgment as between two

reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *N.C. State Bar v. Nelson*, 107 N.C. App. 543, 421 S.E.2d 163, 166 (1992) (alteration in original) (citations and quotation marks omitted), *aff'd per curiam*, 333 N.C. 786, 429 S.E.2d 716 (1993).

I.  Challenged Finding

First, Defendant argues the Record does not support a finding by clear, cogent, and convincing evidence Defendant *knowingly* made false statements to Valente in his email dated 8 February 2021.  We agree.

The DHC, in its Order of Discipline, found, in relevant part:

> 23. During the 26 May 2020 call, Defendant stated:
>
> > "I'm not really sure what happened with him.  Uh, I don't want to get into his personal life, but there was a divorce, there was a custody, there was a remarriage, uh, there was a ex-wife dating one of the defense lawyers we go against all the time, so I'm sure all of that had some impact on his productivity."
>
> 24. In February 2021, Defendant and Valente were in a dispute over what portion of the legal fee from K.D.'s case Defendant was entitled to collect.
>
> 25. During email communications related to this dispute, Valente told Defendant that K.D. informed him that Defendant made comments to K.D. about Valente's divorce.
>
> 26. On 8 February 2021, Defendant told Valente in an email that he did not mention Valente's personal circumstances to K.D.
>
> 27. Defendant also told Valente he was not aware of the "severity and complexity" of Valente's "personal struggles but they would never have been fodder or topic of discussion with anyone much less a client."

28. Defendant's statements to Valente about his WebEx discussion with K.D. were false.

29. Defendant knew these statements were false at the time he made them to Valente.

In making these Findings, the State Bar relied on Defendant's 8 February 2021 email and the 26 May 2020 Webex recording and transcript. These documents reflect Defendant's 8 February 2021 statements were incorrect; however, they do not establish Defendant *knew* these statements were incorrect. The State Bar contends "[t]he DHC can make reasonable inferences from the evidence concerning knowledge and intent." Indeed, our Court has previously concluded "it is axiomatic that one's state of mind is rarely shown by direct evidence and must often be inferred from the circumstances." *N.C. State Bar v. Sutton*, 250 N.C. App. 85, 112, 791 S.E.2d 881, 901 (2016) (citation omitted). However, "[a] basic requirement of circumstantial evidence is reasonable inference from established facts. Inference may not be based on inference." *Lane v. Bryan*, 246 N.C. 108, 112, 97 S.E.2d 411, 413 (1957). "Every inference must stand upon some clear and direct evidence, and not upon some inference or presumption." *Id.* (citations omitted).

On appeal, the State Bar argues it can be inferred from the evidence, including the recording of the discussion, that Defendant "thought carefully" before he made his initial statement to K.D. about Valente's personal circumstances in May 2020. From this, the State Bar posits, it might then be inferred Defendant recalled making

this statement when he wrote the email to Valente in February 2021. First, there are no findings by the DHC making either inference. This merely constitutes the State Bar's speculation on what the DHC might have inferred.

Moreover, even the rationale advanced by the State Bar on appeal infers Defendant's knowing misstatement from an inference that he must have recalled the prior statement about Valente because of an inference Defendant "thought carefully" before making the statement about Valente. This does not constitute circumstantial evidence of Defendant's knowledge at the time he emailed Valente. To the contrary, it is mere speculation built upon inference from inference from inference. *See Thompson v. Wal-Mart Stores, Inc.*, 138 N.C. App. 651, 654, 547 S.E.2d 48, 50 (2000) (citing *Lane*, 246 N.C. at 112, 97 S.E.2d at 413) ("inferences must be based on established facts, not upon other inferences. In other words, a jury may draw an inference from a set of facts, but may not then use that inference to draw another inference.").

Applying the whole-record test, there is not clear, cogent, and convincing evidence to support the Order's Finding of Fact Defendant *knew* his statements were false at the time Defendant made those statements in his email to Valente on 8 February 2021. Thus, the trial court erred in finding "Defendant knew these statements were false at the time he made them to Valente." Therefore, this Finding does not support the DHC's Conclusions of Law.

II.   The DHC's Conclusion of Law

Next, Defendant argues the DHC erred in concluding Defendant's statements to Valente in the email dated 8 February 2021 violated Rule 8.4(c) of the North Carolina Rules of Professional Conduct. Rule 8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer." N.C. R. Prof. Conduct 8.4(c).

Here, the State Bar contends Defendant's "false statement adversely reflects on his fitness as an attorney." The DHC's Order found: Defendant made statements to K.D. concerning some of Valente's personal struggles during a Webex call on 26 May 2020; on 8 February 2021, Defendant denied making these statements in an email to Valente; and Defendant's statements to Valente about his Webex discussion with K.D. were false. The Order does not, however, find that Defendant's statements to K.D. regarding Valente reflected on Defendant's fitness as a lawyer. Further, nothing in the Order indicates any rationale for why such a misstatement—knowing or not—would justify discipline under Rule 8.4(c) in this particular case. Moreover, the State Bar on appeal offers no support for its contention that a misstatement in the midst of a professional dispute with another lawyer necessarily constitutes conduct reflecting adversely on a lawyer's fitness as a lawyer.

Thus, the DHC's Findings do not support its Conclusion Defendant violated Rule 8.4(c) of the North Carolina Rules of Professional Responsibility. Therefore, the DHC erred in concluding grounds existed to discipline Defendant under N.C. Gen.

Stat. § 84-28(b)(2). Consequently, we reverse the Order of Discipline entered by the DHC.[2]

## **Conclusion**

Accordingly, for the foregoing reasons, the Order of Discipline entered by the DHC of the North Carolina State Bar is reversed.

REVERSED.

Judges GORE and GRIFFIN concur.

---

[2] As we reverse the Order of Discipline and conclude the sole ground for discipline is not supported by the evidence or Findings of Fact, we do not reach Defendant's argument as to the discipline imposed.